Governor Vance having informed the judges that the Secretary of War puts his objection to the release of citizens who have been arrested as conscripts by the officers of the Confederate States after they had been discharged by the State tribunals on writs of habeas corpus, upon the ground that the courts of the State had no jurisdiction over the subject, the Court directed the question to be argued as preliminary to the disposition of the many applications before it by writs ofhabeas corpus, and assigned a day. As the organ of the Court, I addressed a communication to his Excellency the President of the Confederate States, informing him of the fact, and that the Court would be pleased to hear an argument by the Attorney-General of the Confederate States or any other gentleman of the bar he might appoint for the purpose. The question has been fully argued by Mr. Moore and Mr. Winston in support of the jurisdiction, and by Mr. Strong, District Attorney of the Confederate States, with whom was associated Mr. (19) Bragg, against the jurisdiction. *Page 3 
We have devoted to the subject that temperate and mature deliberation which its great importance called for, and the Court is of opinion that it has jurisdiction and is bound to exercise it, and to discharge the citizen whenever it appears that he is unlawfully restrained of his liberty by an officer of the Confederate States. If the restraint is lawful, the Court dismisses the application and remands the party. If, on the other hand, the restraint is unlawful, the Court discharges him. The lawfulness or unlawfulness of the restraint necessarily involves the construction of the act of Congress under which the officer justifies the arrest, and the naked question is, By whom is the act of Congress to be construed? By the Secretary of War and the subordinate officers he appoints in order to carry the conscription acts into effect, or by the judiciary? Or, if the latter, have the State courts jurisdiction over the subject? This, as was well remarked by Mr. Strong, is a dry question of constitutional law, and its decision should not be influenced by collateral disturbing causes.
The jurisdiction of the State courts over the subject is settled in this State, and has been so considered as far back as the traditions of the bar carry us. In 1815 Judge Taylor, 2 Law Rep., 57, published Lewis's case, decided by the Supreme Court of Massachusetts, in which the Court, upon a habeas corpus to an officer of the United States, took jurisdiction and discharged a soldier on the ground that the enlistment was not valid by the proper construction of the act of Congress. That decision was concurred in by the bench and bar in this State, and the jurisdiction has ever since been exercised by our courts and judges, and treated as "settled" until the present term of the Court. In Ex parte Mason, 5 N.C. 336
(1809), the jurisdiction was exercised, and a soldier of the United States was discharged by the Court. We have traditions of other cases tried by single judges, but no reports were made of them. About 1847, while on the Superior Court bench, I exercised the jurisdiction, and a soldier was brought before me at Smithville, on a writ (20) directed to the officer in command at Fort Caswell (Captain Childs, who afterwards so highly distinguished himself in Mexico), In reMills, who claimed exemption as a shoemaker during the past winter. In my letter to Judge Battle and Judge Manly, asking their opinion as to the construction of the conscription and exemption acts, all three of us took it for granted that the question of jurisdiction was settled, and in the opinion filed by me in that and all of the other cases which have been before me, I set forth that the power of the State judges to put a construction upon the acts of Congress, so far as they involve the rights of the citizen (as distinguished from mere military regulations), is *Page 4 
settled, and all of the other judges in this State who have issued writs ofhabeas corpus have so treated it (Judges Battle, French, Heath, and Shipp).
The question has been considered as settled in the other States, and their courts have in many cases assumed and exercised the jurisdiction, and it has been conceded by the courts of the United States. Chancellor Kent, 1 Com., 440, referring to Stacey's case, says: "The question was therefore settled in favor of a concurrent jurisdiction in that case, and there has been a similar decision and practice by the courts of other States." In the note many cases are referred to. Hurd, in his treatise onHabeas Corpus, under title "Concurrent Jurisdiction," refers to and collates a great many cases which fully support his conclusion: "It may be considered settled that State courts may grant the writ in all cases of illegal confinement under the authority of the United States." So if any question can be settled by authority, the concurrent jurisdiction of the State courts must be treated as settled. It must be presumed that this long series of cases which establish the concurrent jurisdiction of the State courts, and their power to put a construction on acts of Congress when necessary to the decision of a case before them, is supported by the most clear and satisfactory reasoning, and it would be idle to attempt to add anything to what has been said by the many able judges who (21) have discussed the question. I will content myself by making a few extracts from some of the opinions. Tilghman, C. J., inLockington's case, Brightly, 269, (in 1818) says: "It is to be observed that the authority of the State judges in cases of habeas corpus emanates from the several States, and not from the United States. In order to destroy their jurisdiction, therefore, it is necessary to show, not that the United States have given them jurisdiction, but that Congress possesses and has exercised the power of taking away that jurisdiction which the States have vested in their own judges." Southard, J., in S. v. Brearly, 2 So. 555, (1819) says: "It will require in me a great struggle, both of feeling and judgment, before I shall be prepared to deny the jurisdiction of the State, and say that she has surrendered her independence on questions like this, and that her highest judicial tribunal, for such purposes, is incapable of inquiring into the imprisonment of her citizens, no matter how gross or illegal it may be, provided it be by the agents of the United States and under color of their laws." "Have we lost the jurisdiction because we cannot construe and determine the extent and operation of acts of Congress? We are often compelled to construe them; they are out supreme law, when made in conformity with the Constitution. Is it because the United States is a party? How does she become a party on such a question? Is she a party for the purpose of despotism? Whenever a man holds a commission from her shall he, *Page 5 
without legal authority, or in violation of her own statutes, injure, imprison, or oppress the citizen? Surely not." In Slocumb v. Mayberry, 2 Wheat., 1, (1817), Slocumb was surveyor for the port of Newport in Rhode Island, and under the directions of the collector had seized the "Venus," lying in that port with a cargo, ostensibly bound to some other port in the United States. Mayberry, who was the owner of the cargo, brought an action of replevin in the State court for restoration of the cargo. Slocumb put his defense on the ground that he was an officer of the United States, and the seizure of the vessel and cargo was authorized by an act of Congress, and denied the jurisdiction of (22) the State court. The court took jurisdiction, and decided in favor of Mayberry, on the ground that the act of Congress, by its proper construction, only authorized the seizure and detention of the vessel, and did not embrace the cargo; consequently the officer had detained the cargo against law. Slocumb carried the case to the Supreme Court of the United States, where it was held that the State court had jurisdiction, and had put a proper construction on the act of Congress. Marshall, C. J., says: "Had this action been brought for the vessel, instead of the cargo, the case would have been essentially different; the detention would have been by virtue of an act of Congress, and the jurisdiction of a State court could not have been sustained; but the action being brought for the cargo,to detain which the law gave no authority, it was triable in the State court." I cite this case, particularly, because in the action of replevin the thing is taken out of the possession of the officer, as the person is taken out of the possession of the officer under a writ of habeas corpus;
so it is directly in point to show that a State court has jurisdiction wherever the law gives no authority to detain the person or the thing; and, in order to decide that question, the State court has power to put a construction on the act of Congress under which the officer justifies the imprisonment or detention.
To oppose this array of authorities and reason, Mr. Strong relies on two cases: Ableman v. Booth, 21 How., 506, and Hill's case, recently decided by the Supreme Court of Alabama. With the decision inAbleman v. Booth, 21 How., 506, we entirely concur, and agree withTaney, C. J., that it is "a new and unprecedented attempt, made for thefirst time, by a State court" to assume, not merely an exclusive jurisdiction, but a jurisdiction controlling the District Court of the United States. This decision of the Supreme Court of the United States in no wise impugns the concurrent jurisdiction of the State courts, which has been settled by the authorities and reasoning to which we have referred. Two cases were presented. Booth was arrested under (23) a warrant of the commissioner appointed in pursuance to an act of Congress in respect to fugitive slaves, under a charge of having aided *Page 6 
in the rescue of a fugitive slave; and upon examination before the commissioner, probable cause being shown, he was committed to answer a charge of the United States for a misdemeanor, before the District Court in the State of Wisconsin; he gave bail for his appearance, but was afterwards surrendered by his bail and imprisoned by the marshal; whereupon he obtained a writ of habeas corpus from a judge of the State and was discharged. After being discharged, the grand jury found a bill of indictment against him in the District Court, upon which he was tried and convicted and sentenced to pay a fine and be imprisoned. While in prison, under sentence, he obtained a writ of habeas corpus from the Supreme Court of the State, and was discharged; whereupon the Supreme Court of the United States had the matter brought before it on a writ of error, and decided that as Booth, in the first case, was legally in custody of the marshal on a warrant of commitment to answer a charge for an indictable offense before the District Court, and, in the second case, was in jail under the sentence of the District Court, the State court had no jurisdiction by habeas corpus to take him out of the custody of the marshal, or out of jail and discharge him. This was the decision in the case, and if the language used by the Chief Justice in delivering the opinion is construed in reference to the facts of the case before the Court, there is nothing either in the decision or the opinion which denies the concurrent jurisdiction of the State courts. It is true the language is susceptible of a wider meaning, and may afford room for an inference that the learned Chief Justice "goes outside of the record," and expresses an opinion against the jurisdiction of the State courts in all cases where one is restrained of his liberty by an officer or agent of the Government of the United States, although the imprisonment be unlawful, and is not authorized by the act of Congress under which the officer professes (24) to act; but, in our opinion, such an inference will do great injustice to that able jurist; he surely could not have intended to put "his obiter dictum" in opposition to the series of authorities above referred to, without making any allusion or reference to them, or any attempt to controvert the reasoning upon which they rest. However this may be, the decision does not conflict with the concurrent jurisdiction of the State courts, and the obiter dictum, if it be one, is not entitled to the weight of an authority, and must be treated simply as the opinion of an able lawyer on a question not presented by the facts before the Court, and entitled only to that degree of consideration which its intrinsic merit will command.
The same remarks are applicable to the case of Hill and others, recently decided by the Supreme Court of Alabama. The petitioners claimed to be entitled to exemption by reason of bodily incapacity, but had not been held unfit for military service in the field by a surgeon, *Page 7 
under the rule prescribed by the Secretary of War. We fully concur in the decision of the case before the Court; indeed, during the last spring, I refused the application of two persons who claimed exemption on the ground of being "unfit for military service in the field by reason of bodily incapacity," because by the proper construction of the exemption act, only those persons are exempted who shall be held "unfit for military service in the field by reason of bodily incapacity, under rules to be prescribed by the Secretary of War;" and, according to these rules, it was necessary that the party should be examined by a surgeon, or board of surgeons, appointed for that purpose, and the certificate of the surgeon or board of surgeons was the only evidence of bodily incapacity that could be acted on as evidence of the fact; so, in that case, the parties were not unlawfully restrained of their liberty, but were lawfully in custody of the officer of the Confederate States, under the authority of the acts of Congress, according to their proper construction. Consequently, that decision is not opposed to the jurisdiction of the State courts when by the proper construction of the acts of Congress one who is not liable to conscription, or who is exempt, is (25) restrained of his liberty against law. That portion of the opinion, and reasoning of the learned Chief Justice, which is not applicable to the case, made by the facts before the Court, has received from us due consideration.
On the argument, this position was taken: Congress may authorize the President to suspend the writ of habeas corpus: this would not apply to the State tribunals, and if the State courts and judges have power to issue the writ when a person is imprisoned by an officer of the Confederate States, the suspension of the writ, so far as the tribunals of the Confederate States are concerned, would be vain and nugatory. This reply answers the position: The act of Congress would specify the cases in which the writ might be suspended, or would, in general terms, authorize the President to suspend it in all cases where a person shall be imprisoned by order of the President. And as the acts of Congress made in pursuance of the Constitution are the supreme law of the land, it follows that such an act would be as imperative on the State courts and judges as on the tribunals of the Confederate States.
This position was also taken: It is admitted that should a judicial tribunal of the Confederate States, by its construction of an act of Congress, subject a citizen to imprisonment wrongfully, the State courts, having only concurrent jurisdiction, could not interfere to prevent the oppression; and on what ground can they have any more power to prevent oppression on the part of the executive (if we may suppose such a case) than to prevent oppression on the part of the Confederate judiciary? This reply, we think, is a conclusive answer: The judicial *Page 8 
tribunals of the Confederate States have jurisdiction, consequently any adjudication of those tribunals would fix the construction of the act of Congress, and the State courts could not review or reverse its decision; whereas the executive branch of the Government has no judicial power, and any construction it might give to an act of Congress would (26) be the subject of review, either by the State courts or the Confederate courts; and when a citizen is unlawfully deprived of his liberty or property by an executive officer, acting under an erroneous construction of an act of Congress, the State courts may give redress, as in Slocumb v. Mayberry, supra.
This further position was taken, and seemed to be mainly relied on: By the conscription and exemption acts, Congress invests the Secretary of War, and the officers he is authorized to appoint in order to carry them into effect, with a quasi-judicial power, by which the enrolling officers have jurisdiction to "hear and determine" all questions which are necessary to be decided in order to ascertain whether a person is liable to conscription, or is entitled to exemption, which of course includes the power to put a construction on the acts of Congress. From the decision of the enrolling officer there is an appeal to the commandant of conscripts, and from his decision there is an appeal to the Secretary of War; and possibly there is an appeal to the President. This grant of judicial power is deduced from the several clauses in the acts of Congress by which the Secretary of War is authorized "to make rules and regulations to carry the acts into effect," and from the nature of the subject, because without exercising judicial power it would be impracticable to execute the conscription acts. This position is not tenable. There are three conclusive objections to it:
1. Congress has no power to make the Secretary of War a judge, or to authorize him to invest his subordinate officers with judicial power, for, as I say in the opinion delivered by me In re Meroney: "It is true, for the purpose of carrying acts of Congress into effect, the Secretary of War, in the first place, puts a construction on them, but his construction must be subject to the decision of the judiciary; otherwise our form of government is subverted, the constitutional provision by which the legislative, executive, and judicial departments of the Government are separate and distinct is violated, and there is no check or control over the executive." The circumstances growing out of the (27) subject now under consideration demonstrate the wisdom of the framers of the Constitution in adopting the principle by which Congress has no authority to exercise judicial power or to confer judicial power upon a department of the executive branch of the Government. The military officers appointed to execute the conscription acts *Page 9 
are naturally prompted to increase the numerical force of the army, and for this purpose so to construe the acts as to embrace as many persons as possible. For this reason, and as a protection to those citizens who are not embraced by the conscription acts, the Constitution provides a third branch of the Government in which is confided the trust of expounding the law and putting a construction upon the acts of Congress, and it follows that Congress has no power to ignore the existence of this third branch of the Government and confer on the executive powers which belong to the judiciary.
2. There is no apparent intention of Congress to confer judicial power on the Secretary of War, and authorize him to establish inferior and superior courts, with the right of appeal to himself. If such had really been the intention, it would have been expressed in plain and direct terms, and the simple fact that the Secretary of War is authorized "to prescribe rules and regulations to carry the acts of Congress into effect," which power he would have had almost by necessary implication, surely cannot, when considered calmly and uninfluenced by collateral disturbing causes, be considered sufficient to confer a power on the Secretary of War totally at variance with every principle of our government.
3. If the Secretary of War and his subordinate officers are invested with this judicial power so as to exclude the jurisdiction of the State courts, for the very same reason it would exclude the jurisdiction of the courts and judges of the Confederate States. No provision is made by which a case can be taken for review before the District Court of the Confederate States from these military judicial tribunals. Consequently the judicial department of the Government, both State and Confederate, is set aside, and the liberty of the citizen depends solely on the action of the War Department and its subordinate officers. Can (28) this be so? Surely not.
Our conclusion is that the Court has jurisdiction to discharge a citizen by the writ of habeas corpus whenever it is made to appear that he isunlawfully restrained of his liberty by an officer of the Confederate States; and that when a case is made out, the Court is bound to exercise the jurisdiction, which has been confided to it "as a sacred trust," and has no discretion and no right to be influenced by considerations growing out of the condition of our country, but must act with a single eye to the due administration of the law, according to the proper construction of the acts of Congress.