JERRY W. GOBLE v. V. LEE BOUNDS, Director of the North Carolina Department of Correction

No. 111

(Filed 10 May 1972)

Convicts and Prisoners § 2— prison records — inspection by inmate

A prison inmate has no right to examine the contents of his prison file and to offer commentary on items which may adversely affect his opportunities for honor grade status, work release or parole.

APPEAL by plaintiff from order of *Long, J.*, July 11, 1971 Session, CASWELL Superior Court.

The plaintiff, Jerry W. Goble, prisoner in the Blanch Prison complex in Caswell County, North Carolina, instituted this proceeding against V. Lee Bounds, Director of the North Carolina Department of Correction, alleging in substance the following: The prisoner believes his personnel record in the Prison Department includes a letter from the solicitor of the Twelfth

Goble v. Bounds

Solicitorial District who prosecuted him in the superior court. The letter contains statements "which are derogatory of plaintiff and are highly damaging to his reputation" and "have adversely affected his opportunities for earning honor grade status, work release, or parole." Plaintiff believes the allegations contained in said letter must be false and the plaintiff desires the opportunity to know the contents of the said letter and to be able to explain, deny, and rebut all parts of said letter which he might find to be inaccurate. Plaintiff has made known to defendant his desire to read the letter. Plaintiff has been denied the opportunity to review the letter, consider its accuracy, and offer any commentary on the letter that he may desire.

The plaintiff's prayer for relief requests the following: "Preliminary injunction and permanent injunction be entered against defendant, enjoining him to permit plaintiff to inspect and comment upon the letter referred to herein contained in plaintiff's personal file, and generally to permit plaintiff to inspect and comment upon the contents of his personal file maintained by defendant."

In addition to his individual complaint, the prisoner alleges the defendant consistently refuses to other prisoners the right to inspect their individual files and he seeks to make this a class action and to obtain an order that all files be open to inspection.

The Attorney General, acting for the defendant, moved to dismiss the action upon these grounds: (1) The complaint fails to state a cause of action upon which relief may be granted; (2) the court lacks jurisdiction over the subject matter of the action; and (3) the prison rules under G.S. 148-11 and 148-13 provide that the granting of work release or parole is left to the State Department of Correction after conviction, and after the courts have passed final judgment.

The court adjudged the plaintiff is lawfully in the custody of the Commissioner of Correction pursuant to G.S. 148-4. All prisoners serving sentences shall be subject to all the rules and regulations legally adopted for the government thereof. Prison records of inmates are confidential and are not subject to inspection either by the public or by the inmate concerned. The court dismissed the prisoner's petition.

Goble v. Bounds

*Smith, Paterson, Follin & Curtis by Norman B. Smith and Michael K. Curtis for plaintiff appellant.*

*Robert Morgan, Attorney General by Jacob L. Safron, Assistant Attorney General for defendant appellee.*

HIGGINS, Justice.

Ordinarily when the court enters a final judgment in a criminal case, the execution of the sentence becomes the function of the executive branch of the State Government. The legislative branch makes the rules which govern the operation of the State's prisons. By G.S. 148-1 (Chapter 996, Session Laws of 1967) the Legislature created the State Department of Correction; and by G.S. 148-51.1 provided for the Board of Paroles. G.S. 148-59 requires the clerks of the superior and the clerks of all inferior courts to attach to the commitment of each prisoner sentenced a statement giving:

(1)  The court in which the prisoner was tried;

\* \* \* \* \* \* \* \*

(4)  The offense with which the prisoner was charged and the offense for which convicted;

\* \* \* \* \* \* \* \*

(6)  The name and address of the presiding judge;

(7)  The name and address of the prosecuting solicitor;

\* \* \* \* \* \* \* \*

(9)  The name and address of the arresting officer; and

(10)  All available information of the previous criminal record of the prisoner.

"The prison authorities receiving the prisoner for the beginning of the service of sentence shall detach from the commitment the statement furnishing such information and forward it to the Board of Paroles, together with any additional information in the possession of such prison authorities . . . and the information thus furnished shall constitute the foundation and file of the prisoner's case."

G.S. 148-64 provides that the officials and employees of the Department of Correction and the Board of Paroles shall cooperate and furnish each other such information and assist-

ance as will promote the purpose for which these agencies were established. "The Board of Paroles and its staff shall have free access to all prisoners."

The legislative enactments tie the three branches of State Government together in the business of dealing with crimes against the State. The Legislature makes the laws. The judicial branch interprets them and enters judgment. The executive branch takes over the custody of the prisoner and effects the judgment with such modifications favorable to the prisoner as the above designated agencies deem for the best interest of the State and the prisoner.

The prisoner's complaint in this case relates to the manner in which the executive branch is dealing with his qualifications for honor grade status, work release, and parole.

The granting of the above privileges is by way of mitigating the terms of the judgment which the court has entered. The legality and propriety of the trial and sentence have already been determined after the prisoner has been heard and his constitutional rights have been accorded him. The merits of the trial and the validity of the judgment may not again be raised before the Department of Correction and the Board of Paroles.

The authorities are required to keep a file on each person admitted to prison and to make a periodic review to ascertain whether the prisoner's conduct and attitude merit his release earlier than the time fixed by the court's sentence. The file must contain the name and address of the judge, of the investigating officer, and of the State's prosecutor. These sworn officials know more of the background of the case than the record discloses. The identity of these officers is a required part of the prisoner's file. Hence, the officers may be consulted on matters in addition to that which the record discloses. Their reports would be of more value, perhaps, if they were treated in confidence.

Whether to release a prisoner before the completion of his sentence is a question with many facets. It cannot be answered by rules of law. Those who have watched the prisoner during his confinement are better qualified than the courts to say if and when he merits parole. Another court proceeding would be a poor substitute for the method now employed.

In the instant case the prisoner says he has information that a letter is in his file from the public prosecutor which contains statements "derogatory . . . and highly damaging to his reputation." If the Court opens prison files for inspection, many prisoners will want to inspect and refute. In fact in this case the prisoner asks that his application be treated as a class action and the Court order all files to be opened for inspection.

Of course a prisoner takes with him into the prison certain rights which may not be denied him. *Lee v. Washington,* 390 U. S. 333, 19 L.Ed. 2d 1212. The legal right to the mitigation of his punishment is not one of them. It is contemplated as a part of his rehabilitation that he earn his right to honor grade status, work release, or parole. The decision is not in the nature of an adversary proceeding under rules of evidence. The Supreme Court of the United States in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, states: "The practice of probation which relies heavily on non-judicial implementation has been accepted as a wise policy. Execution of the United States parole system rests on the discretion of an administrative board. . . . The due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure."

In the case of *Menechino v. Oswald,* 430 Fed. 2d 403, the Court said: " . . . He (the prisoner) is entitled only to be released after full service of his sentence less good time earned during incarceration. The Board is given absolute and exclusive discretion to decide whether or not to initiate parole proceedings and, if so, whether parole should be granted to him. Appellant has been constitutionally deprived of his right to liberty for the period of his sentence. . . . (H)e does not qualify for procedural due process in seeking parole."

In the case of *Tarlton v. United States,* 430 Fed. 2d 1351 (5th Circuit) the Court passed on the question now before us.

"By his first motion Tarlton sought to obtain access to his prison file to learn the source of a derogatory statement which was allegedly made concerning him. As the District Court held, PRISON RECORDS OF INMATES ARE CONFIDENTIAL AND ARE NOT SUBJECT TO INSPECTION BY THE PUBLIC NOR THE INMATE CONCERNED." (Emphasis added.)

Whether the prisoner in this case is entitled to honor grade status, work release, or parole involves policy decisions which should be decided by the Department of Correction and the Board of Paroles. These agencies are charged with the duty and are properly given means of discharging it not available to the courts.

The judgment entered in the superior court dismissing the action is

Affirmed.