IN THE MATTER OF THE IMPRISONMENT OF WALTER LEWIS STEVENS, JR.

No. 7510SC731

(Filed 4 February 1976)

1. Habeas Corpus § 1— questions determinable upon petition for writ

The only questions open to inquiry upon a petition for a writ of habeas corpus are whether on the record the court which imposed the sentence had jurisdiction of the matter or had exceeded its powers; furthermore, the Legislature has clarified the scope of a court's habeas corpus jurisdiction to include those instances where, though the original imprisonment was lawful, yet by some act, omission or event, which has taken place afterwards, the party has become entitled to be discharged. G.S. 17-33 (2).

2. **Convicts and Prisoners § 2; Habeas Corpus § 1— disciplinary proceeding of Corrections Department — writ of habeas corpus improper remedy**

   The problems of when a person should be released from prison and under what circumstances turn on analysis of internal correctional policy, and rightfully lie within the sole administrative jurisdiction of State governmental departments, and are not, barring a clear instance of constitutional infirmity, subjects appropriate for judicial scrutiny; therefore, where respondent, a committed youthful offender, attained an honor grade status and was recommended for conditional release but became involved in an altercation before his release which resulted in disciplinary proceedings by the Corrections Department and a recalculation of his correctional status from honor grade to "A" grade, the Superior Court incorrectly applied the law with respect to habeas corpus in finding that the Department of Corrections' actions were without justification and in ordering that the disciplinary proceeding against respondent and its results be stricken from respondent's record and not be taken into account in further recommendations for parole or conditional release.

ON *certiorari* to review the order of *Bailey, Judge*. Order, pursuant to a writ of habeas corpus, entered in Superior Court, WAKE County, 5 June 1975. Heard in the Court of Appeals 13 January 1976.

On 25 October 1972, Stevens was sentenced to a term of imprisonment as a committed youthful offender upon entry of a judgment upon a conviction on charges in Guilford County of breaking and entering and larceny and receiving. Stevens attained an honor grade status during the course of his imprisonment and, on 1 March 1974, was recommended for conditional release.

However, no action was taken on the recommendation, because of Stevens's alleged involvement in a 26 March 1974 altercation in which a fellow inmate was burned, purportedly deliberately. Defendant was charged with assault, and the district court found no probable cause. Notwithstanding the district court's determination, a Corrections Department disciplinary hearing committee on 22 April 1974 found Stevens "guilty" of the 26 March 1974 "offense" and sanctioned him by disciplinary segregation for seven to fifteen days, suspended for six months, and by recalculation of his correctional status from honor grade to "A" grade.

Stevens moved in the Superior Court by way of a writ of habeas corpus on 15 October 1974 and charged *inter alia,* that due to the " . . . arbitrary action of officials of the State De-

In re Stevens

partment of Correction, your applicant was denied further consideration for a conditional release for which he had previously been recommended."

The Superior Court, on 5 June 1975, found that the Department of Corrections' actions were "without justification" and ordered that "[t]he disciplinary action arising out of the alleged burning incident occurring on March 26, 1974 in Montgomery County, North Carolina and which diciplinary action resulted in a reduction from honor grade to A grade, be stricken from the State Department of Corrections offense and disciplinary reports and all records of transactions. . . . The results of disciplinary proceedings arising out of that incident [should] not be taken into account in further disciplinary proceedings, recommendations for parole and/or conditional release."

The State filed a petition for a writ of certiorari. We granted the petition and issued the writ.

*Attorney General Edmisten, by Special Deputy Attorney General Jacob L. Safron, and Associate Attorney Jack Cozart, for the State appellant.*

*George R. Barrett for respondent appellee.*

MORRIS, Judge.

The State contends that the Superior Court did not have jurisdiction over the matters raised in the petitioner's writ of habeas corpus. We agree.

The writ of habeas corpus is critically significant to American jurisprudence and as such must be considered a " . . . precious safeguard of personal liberty. . . . " 39 C.J.S., Habeas Corpus, § 1, p. 424. Moreover, in view of its importance historically and legally, the writ has been designed as an effective means of obtaining " . . . a speedy release of persons who are illegally deprived of their liberty or illegally detained. . . . " 39 Am. Jur. 2d, Habeas Corpus, § 1, p. 179.

[1] Though obviously essential to the maintenance of civil liberty, the writ is not unlimited in its jurisdictional scope, utility and function. "It is essentially a writ of inquiry, and is granted to test the right under which a person is detained." 39 Am. Jur. 2d, Habeas Corpus, § 1, p. 179. However, the writ is not appropriately " . . . a substitute for appeal." *In re Burton,*

257 N.C. 534, 541, 126 S.E. 2d 581 (1962). Rather, the writ is considered an extraordinary process and jurisdictional mechanism under which " . . . the sole question for determination . . . is whether [the] petitioner is then being unlawfully restrained of his liberty. . . . The only questions open to inquiry are whether on the record the court which imposed the sentence had jurisdiction of the matter or had exceeded its powers." *Id.* at 540. Also see G.S. 17-4(2) and G.S. 17-33. Our Legislature, furthermore, has clarified the scope of a court's habeas corpus jurisdiction to include those instances "[w]here, though the original imprisonment was lawful, yet by some act, omission or event, which has taken place afterwards, the party has become entitled to be discharged." G.S. 17-33(2).

[2]    Here, defendant is unsatisfied with an essentially administrative determination whereby his correctional status was affected adversely. Without doubt, this revision of his status from an honor grade to the lesser "A" grade, diminished his prospect for an early release; but this, standing by itself, raises no habeas corpus question. As Justice Sharp (now C.J.) has stated, "[t]he writ [of habeas corpus] is not available to test a prisoner's right to be released at some future time." *Jernigan v. State,* 279 N.C. 556, 559, 184 S.E. 2d 259 (1971). In practical terms, the questions of grade of conduct, privileges, disciplinary action and commendations " . . . are strictly administrative and not judicial [matters]." *State v. Garris,* 265 N.C. 711, 712, 144 S.E. 2d 901 (1965). Thus, the difficult problems of when a person should be released and under what circumstances turn on analysis of internal correctional policy, and rightfully lie within the sole administrative jurisdiction of our State governmental departments, and are not, barring a clear instance of constitutional infirmity, subjects appropriate for judicial scrutiny. *Goble v. Bounds,* 281 N.C. 307, 312, 188 S.E. 2d 347 (1972). In this case, the Superior Court incorrectly applied the law with respect to habeas corpus, and its decision is, therefore, without binding effect.

Reversed.

Chief Judge BROCK and Judge BRITT concur.