STATE v. LEACH

[227 N.C. App. 399 (2013)]

———

STATE OF NORTH CAROLINA
v.
REGINALD TERRELL LEACH

No. COA12-962

Filed 21 May 2013

**Prisons and Prisoners—writ of habeas corpus—denial of request for release on parole—failure to show entitlement to discharge**

The trial court did not err by denying defendant's petition for the issuance of a writ of *habeas corpus* regarding the denial of his request for release on parole pursuant to a petition for the issuance of a writ of *certiorari* that was allowed by the Court of Appeals on 8 February 2012. Defendant failed to establish that he had a colorable claim to be entitled to be discharged from custody based on an alleged deprivation of a constitutionally protected liberty interest without due process of law.

Appeal stemming from the allowance of a request for *certiorari* by defendant from order entered 5 May 2011 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 30 January 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Jodi Harrison, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kathleen M. Joyce, for defendant.*

ERVIN, Judge.

Defendant Reginald Terrell Leach challenges the trial court's order denying his petition for the issuance of a writ of habeas corpus pursuant to a petition for the issuance of a writ of *certiorari* that was allowed by this Court on 8 February 2012. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

On 14 December 1992, the Cabarrus County grand jury returned bills of indictment charging Defendant with trafficking in between 28 and 200 grams of cocaine by manufacturing, trafficking in between 28 and 200 grams of cocaine by transportation, and trafficking in between 28 and 200 grams of cocaine by possession. On 24 May 1993, the Cabarrus County grand jury returned a bill of indictment charging Defendant with the murder of John Thomas Ford. On 12 October 1993, Defendant entered a plea of guilty to three counts of trafficking in cocaine on the condition that the State would voluntarily dismiss the indictments that had been returned against Defendant in two additional cases, that the three counts to which Defendant had entered guilty pleas would be consolidated for judgment, and that Defendant would not be sentenced to more than seven years imprisonment in these cocaine trafficking cases. On the same date, Defendant entered a plea of guilty to second degree murder. On 13 October 1993, Judge W. Douglas Albright found that Defendant had murdered Mr. Ford "while on pretrial release on another felony charge," that Defendant had "a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement," and that Defendant had "killed the deceased with malice, after premeditation and deliberation;" that there were no mitigating factors; that an aggravated sentence should be imposed; and that Defendant should be imprisoned for the term of his natural life. On the same date, Judge Albright entered a judgment consolidating Defendant's three cocaine trafficking convictions for judgment and sentencing Defendant to seven

years imprisonment, with this sentence to be served at the expiration of Defendant's sentence for murdering Mr. Ford.

After a review conducted in September 2005, Defendant was denied release on parole. Following another parole review, Defendant was informed in 2006 that he would be paroled through the Mutual Agreement Parole Program. On 28 March 2007, the Division of Prisons, the Parole Commission, and Defendant signed a Parole Agreement Form. According to this MAPP contract, Defendant agreed "to the conditions set forth in this agreement and [that he] ha[d] read and underst[ood] the Statement of Procedures incorporated herein" and the Division of Prisons and the Parole Commission acknowledged that they would "fulfill the Conditions set forth in this agreement" "if the Participant fulfills the conditions" which applied to him. Although the release date specified in the original agreement was 28 September 2009, Defendant received notice on 8 July 2009 that the Parole Commission had recommended extending his release date for twelve months because of Defendant's failure to comply with the work release provisions set out in the MAPP contract. On 23 July 2009, Defendant agreed to the proposed MAPP contract modification. Subsequently, Defendant was assigned to work at Perdue Farms, where he remained actively employed for more than a year, thereby fulfilling his work release obligation. After Defendant returned to the correctional facility to which he was assigned following a 48 hour home leave on 26 September 2010, the Parole Commission, by means of a notice dated 28 September 2010, terminated Defendant's MAPP contract and denied Defendant's release on parole on the grounds that there was "a substantial risk that [Defendant would] not conform to reasonable conditions of parole" and "would engage in further criminal conduct." Although Defendant submitted a grievance challenging the termination of his MAPP contract and the denial of his request for release on parole, that grievance did not prove successful.

## B. Procedural History

On 4 March 2011, Defendant filed a petition for the issuance of a writ of habeas corpus in the Moore County Superior Court. As a result of the fact that Defendant's imprisonment arose from judgments entered in Cabarrus County, Judge James M. Webb referred Defendant's petition to the Cabarrus County Superior Court. On 5 May 2011, the trial court entered an order denying Defendant's habeas corpus petition pursuant to N.C. Gen. Stat. § 17-4(2) (providing that a petition for the issuance of a writ of habeas corpus should be denied in the event that the applicant is "committed or detained by virtue of the final order, judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of

an execution issued upon such final order, judgment or decree"). On 23 January 2012, Defendant sought the issuance of a writ of *certiorari* for the purpose of obtaining review of the trial court's order by this Court. On 8 February 2012, we allowed Defendant's *certiorari* petition.

## II. Legal Analysis

### A. Standard of Review

According to the statutory provisions governing habeas corpus proceedings as prescribed in North Carolina law, "[e]very person imprisoned or restrained of his liberty within this State, for any criminal or supposed criminal matter, or on any pretense whatsoever, except in the cases specified in [N.C. Gen. Stat. §] 17-4, may prosecute a writ of habeas corpus, according to the provisions of this Chapter, to inquire into the cause of such imprisonment or restraint, and, if illegal, to be delivered therefrom." N.C. Gen. Stat. § 17-3. An application for the issuance of a writ of habeas corpus "must state, in substance, as follows:

(1) That the party, in whose behalf the writ is applied for, is imprisoned or restrained of his liberty, the place where, and the officer or person by whom he is imprisoned or restrained, naming both parties, if their names are known, or describing them if they are not known.

(2) The cause or pretense of such imprisonment or restraint, according to the knowledge or belief of the applicant.

(3) If the imprisonment is by virtue of any warrant or other process, a copy thereof shall be annexed, or it shall be made to appear that a copy thereof has been demanded and refused, or that for some sufficient reason a demand for such copy could not be made.

(4) If the imprisonment or restraint is alleged to be illegal, the application must state in what the alleged illegality consists; and that the legality of the imprisonment or restraint has not already been adjudged, upon a prior writ of habeas corpus, to the knowledge or belief of the applicant.

(5) The facts set forth in the application must be verified by the oath of the applicant, or by that of some other credible witness, which oath may be administered by any person authorized by law to take affidavits.

N.C. Gen. Stat. § 17-7. An application for the issuance of a writ of habeas corpus "shall" be summarily denied:

> (1) Where the persons are committed or detained by virtue of process issued by a court of the United States, or a judge thereof, in cases where such courts or judges have exclusive jurisdiction under the laws of the United States, or have acquired exclusive jurisdiction by the commencement of suit in such courts.
>
> (2) Where persons are committed or detained by virtue of the final order, judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon such final order, judgment or decree.
>
> . . . .
>
> (4) Where no probable ground for relief is shown in the application.

N.C. Gen. Stat. § 17-4. "Any court or judge empowered to grant the writ, to whom such applications may be presented, shall grant the writ without delay, unless it appear from the application itself or from the documents annexed that the person applying or for whose benefit it is intended is, by this Chapter, prohibited from prosecuting the writ." N.C. Gen. Stat. § 17-9. As a result, a trial judge presented with an application for the issuance of a writ of habeas corpus must issue the requested writ, thereby triggering the necessity for further proceedings, unless one of the grounds for denial specified in N.C. Gen. Stat. § 17-4 exists. *In re Boyett*, 136 N.C. 415, 424, 48 S.E. 789, 793 (1904) (stating that "[t]here can be no doubt of the duty and power of the Court to issue the writ of *habeas corpus* when applied for in accordance with statutory provisions").

After the issuance of the requested writ, it must be served upon the person to whom it is directed or the facility in which the applicant is being detained. N.C. Gen. Stat. § 17-12. Upon service of the writ, "[t]he person or officer on whom the writ is served must make a return thereto in writing, and, except where such person is a sworn public officer and makes his return in his official capacity, it must be verified by his oath." N.C. Gen. Stat. § 17-14. According to N.C. Gen. Stat. § 17-14, the person making the return must "plainly and unequivocally" state:

> (1) Whether he has or has not the party in his custody or under his power or restraint.

(2) If he has the party in his custody or power, or under his restraint, the authority and the cause of such imprisonment or restraint, setting forth the same at large.

(3) If the party is detained by virtue of any writ, warrant, or other written authority, a copy thereof shall be annexed to the return; and the original shall be produced and exhibited on the return of the writ to the court or judge before whom the same is returnable.

(4) If the person or officer upon whom such writ is served has had the party in his power or custody, or under his restraint, at any time prior or subsequent to the date of the writ, but has transferred such custody or restraint to another, the return shall state particularly to whom, at what time, for what cause and by what authority such transfer took place.

After the making of the required return, "[t]he court or judge before whom the party is brought on a writ of habeas corpus shall . . . examine into the facts contained in such return, and into the cause of the confinement or restraint of such party." N.C. Gen. Stat. § 17-32. If the applicant takes issue with "the material facts in the return, or other facts are alleged to show that the imprisonment or detention is illegal, or that the party imprisoned is entitled to his discharge, the court or judge shall proceed, in a summary way, to hear the allegations and proofs on both sides, and to do what to justice appertains in delivering, bailing, or remanding such party." N.C. Gen. Stat. § 17-32. The summary nature of the proceedings to be conducted following the return of a writ of habeas corpus reflects the fact that "their principal object [is] a release of a party from illegal restraint" and that such proceedings would "lose many of their most beneficial results" if they were not "summary and prompt." *State v. Miller*, 97 N.C. 451, 454, 1 S.E. 776, 778 (1887). However, the resulting proceedings should not be "perfunctory and merely formal;" instead, relevant facts, " 'when controverted, may be established by evidence like any other disputed fact.' " *In re Bailey*, 203 N.C. 362, 365-66, 166 S.E. 165, 166 (1932) (quoting *In re Veasey*, 196 N.C. 662, 665, 146 S.E. 599, 601 (1929)). "If no legal cause is shown for such imprisonment or restraint, or for the continuance thereof, the court or judge shall discharge the party from the custody or restraint under which he is held." N.C. Gen. Stat. § 17-33. On the other hand, the trial judge must "remand the party" to custody in the event that he or she is being held:

(1) By virtue of process issued by any court or judge of the United States, in a case where such court or judge has exclusive jurisdiction.

(2) By virtue of the final judgment or decree of any competent court of civil or criminal jurisdiction, or of any execution issued upon such judgment or decree.

(3) For any contempt specially and plainly charged in the commitment by some court, officer or body having authority to commit for the contempt so charged.

(4) That the time during which such party may be legally detained has not yet expired.

N.C. Gen. Stat. § 17-34.

Thus, a trial judge to whom an application for the issuance of a writ of habeas corpus is presented must initially determine, based upon an examination of the application and any attached materials, whether the application satisfies the formal requirements specified in N.C. Gen. Stat. § 17-7 and whether the application is subject to summary denial pursuant to N.C. Gen. Stat. § 17-4. In other words, the reviewing judge must determine if the application, on its face, provides a basis for believing that the applicant is, in fact, entitled to be discharged from imprisonment or restraint and must, if it does, issue a writ of habeas corpus. After the writ has been served and the custodial officer makes the required return, the trial court must make the factual and legal decisions necessary to determine whether the applicant is, in fact, lawfully imprisoned or restrained utilizing such procedures as suffice to adequately resolve any relevant issues of law or fact.

As the record clearly reflects, the trial court summarily denied Defendant's application for the issuance of the requested writ rather than denying it after holding a hearing for the purpose of addressing the merits of Defendant's claim.[1] The statutory provisions governing

---

1. The Court has not specified the standard of review which should be utilized in evaluating the validity of Defendant's challenge to the validity of the trial court's order. According to Defendant, our review of the trial court's order should be "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence," *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982), with this proposed standard of review having been derived from a decision evaluating the appropriateness of a trial judge's decision to deny a suppression motion lodged pursuant to N.C. Gen. Stat. § 15A-974. In view of the differences between the nature of the inquiry which a trial judge must conduct in deciding whether to grant or deny a suppression motion and

habeas corpus proceedings contain no indication that a trial judge must make findings of fact and conclusions of law in the course of determining whether an application for the issuance of a writ of habeas corpus should be summarily denied. The general purpose sought to be achieved by requiring a trial court to make specific findings of fact and conclusions of law is to enable a reviewing court to determine the legal and factual basis for the trial court's decision. *State ex rel. v. Williams*, 179 N.C. App. 838, 839, 635 S.E.2d 495, 497 (2006) (stating that the purpose of findings of fact is "to enable this Court to determine whether the trial court's conclusions of law are supported by the evidence"). As a result, findings of fact are only necessary when the trial court is required to resolve disputed factual issues. *Mrozek v. Mrozek*, 129 N.C. App. 43, 49-50, 496 S.E.2d 836, 840-41 (1998) (remanding an equitable distribution order for further proceedings because the trial court's findings of fact failed to indicate that it had properly considered the relevant distributional factors set out in N.C. Gen. Stat. § 50-20(c)). A trial judge need not, however, make findings of fact when the question before the court is purely legal in nature. *Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 261, 400 S.E.2d 435, 440 (1991) (noting that findings of facts and conclusions of law are not required in connection with the resolution of a summary judgment motion and "are disregarded on appeal" if made). For that reason, the extent to which a trial court is required to make findings of fact and conclusions of law generally hinges upon the nature of the issues that the judge in question is called upon to resolve.

As we have already noted, the issue before a trial judge required to conduct the initial review of an application for the issuance of a writ of habeas corpus is whether the application is in proper form and whether the applicant has established a valid basis for believing that he or she is being unlawfully detained and entitled to be discharged. In making this determination, the trial court is simply required to examine the face of the applicant's application, including any supporting documentation, and decide whether the necessary preliminary showing has been made. The making of findings and conclusions would not contribute to a proper appellate review of the decision that the trial judge is required to make at that stage of a habeas corpus proceeding. In an analogous situation involving the summary denial of a motion for appropriate relief in which the motion and supporting affidavits failed to establish the existence of a viable claim for relief, findings and conclusions have been

---

the issues which must be addressed in connection with the initial review of an application for the issuance of a writ of habeas corpus, we do not believe that Defendant has correctly stated the standard of review which should be utilized in this case.

deemed unnecessary. *State v. Harris*, 338 N.C. 129, 143, 449 S.E.2d 371, 377 (1994) (holding that the trial court did not err by summarily denying the defendant's motion for appropriate relief given that "[t]here were no specific contentions that required an evidentiary hearing to resolve questions of fact"), *cert. denied*, 514 U.S. 1100, 115 S. Ct. 1833, 131 L. Ed. 2d 752 (1995). As a result, given the nature of the required inquiry, there is no reason to require the making of findings of fact and conclusions of law at the initial review stage of a habeas corpus proceeding.

The decision concerning whether an application for a writ of habeas corpus should be summarily denied or whether additional proceedings should be conducted based upon the issuance of the requested writ is, in fact, a pure question of law. For that reason, we conclude that Defendant's challenge to the trial court's order should be evaluated using a de novo standard of review. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (stating that "[c]onclusions of law are reviewed de novo and are subject to full review"). Such a standard of review has been utilized in similar circumstances, such as in determining whether a trial judge correctly dismissed a complaint in a civil action for failure to state a claim upon which relief can be granted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (stating that, in reviewing an order granting or denying a motion to dismiss for failure to state a claim for which relief can be granted, "[t]his Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct"), *affirmed*, 357 N.C. 567, 597 S.E.2d 673 (2003), and whether a motion for appropriate relief should have been summarily denied, *State v. Jackson*, __ N.C. App. __, __, 727 S.E.2d 322, 329 (2012) (stating that, "[i]f 'the issues raised by Defendant's challenge to [the trial court's] decision to deny his motion for appropriate relief are primarily legal rather than factual in nature, we will essentially use a *de novo* standard of review in evaluating Defendant's challenge to [the trial court's] order' ") (quoting *State v. Taylor*, __ N.C. App. __, __, 713 S.E.2d 82, 86, *disc. review denied*, 365 N.C. 342, 717 S.E.2d 558 (2011)) (second alteration in original).[2] As

---

2. The Supreme Court has held that, in reviewing a trial court's refusal to conduct an evidentiary hearing in the course of reviewing a motion for appropriate relief, an abuse of discretion standard of review should be utilized. *State v. Elliott*, 360 N.C. 400, 419, 628 S.E.2d 735, 748, *cert. denied*, 549 U.S. 1000, 127 S. Ct. 505, 166 L. Ed. 2d 378 (2006). However, the necessity for conducting an evidentiary hearing and the extent to which a motion for appropriate relief should be summarily denied are not analytically identical decisions, so that the standard of review set out in *Elliott* is not inconsistent with the

a result, a proper consideration of Defendant's challenge to the validity of the trial court's order requires us to " 'consider[] the matter anew and freely substitute[] [our] own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### B.  Validity of Trial Court's Order

In his brief, Defendant argues that this Court should reverse the trial court's order because it "failed to include any findings addressing the content of his petition." In other words, Defendant's principal challenge to the validity of the trial court's order is predicated on the contention that "the court's findings are insufficient . . . because they fail to address, or even acknowledge, the central 'evidence' before it" and "offer[] no hint that its substance was considered." As a result, Defendant requests us to remand the case "for a hearing on the merits of his constitutional claim," at which the findings and conclusions that he believes to be necessary would be made. We do not find Defendant's argument persuasive.

As we have previously indicated, the trial court summarily denied Defendant's application prior to holding a hearing on the merits. For the reasons that we have already noted, the trial court had no obligation to make findings of fact or conclusions of law at this stage of a habeas corpus proceeding. In light of that fact, the trial court's failure to make findings of fact and conclusions of law in the course of summarily denying Defendant's habeas corpus petition simply does not provide a valid basis for overturning that order on appeal. Any argument in support of a contrary conclusion rests upon a misapprehension of the nature of the decision that the trial court was required to make at this stage of a habeas corpus proceeding. Thus, Defendant's specific challenge to the trial court's order is without merit.

Although this deficiency in Defendant's challenge to the trial court's order might, standing alone, justify an affirmance of the trial court's order, *Viar v. N.C. Dept. of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (stating that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant"), the argument advanced in Defendant's brief, when read expansively, can also be understood as a contention that the trial court should have refrained from summarily denying Defendant's habeas corpus petition and required that further

---

standard of review utilized in reviewing decisions to summarily deny a motion for appropriate relief cited in the text.

proceedings, including an evidentiary hearing to address the merits of Defendant's petition, be conducted instead. Any such argument necessarily fails.

In his initial application for the issuance of a writ of habeas corpus, Defendant asserted that he was entitled to relief on the basis of three separate legal theories. More specifically, Defendant asserted (1) that the language of his MAPP contract provided him with a liberty interest in obtaining release on parole and that the Parole Commission's decision to terminate his MAPP contract and decline to authorize his release constituted a deprivation of liberty without due process of law; (2) that the Parole Commission, by failing to release Defendant in accordance with the terms of his MAPP contract, violated its own rules and regulations in contravention of the due process provisions of the state and federal constitutions; and (3) that the Parole Commission, by declining to release Defendant on discretionary grounds, violated the state and federal constitutional prohibition against the enactment of ex post facto laws. As a result, each of the legal theories asserted in Defendant's application and carried forward into Defendant's brief assume that he has fully complied with the conditions of his MAPP contract, that the relevant provisions of his MAPP contract deprived the Parole Commission of the authority to refrain from releasing him given his compliance with all relevant contractual conditions, and that his compliance with those conditions entitled him to immediate discharge.[3]

As a result of the fact that habeas corpus is available in instances in which, "though the original imprisonment was lawful, yet by some act, omission or event, which has taken place afterwards, the party has become entitled to be discharged," N.C. Gen. Stat. § 17-33(2), the extent to which an imprisoned individual is entitled to challenge parole-related decisions by means of an application for the issuance of a writ of habeas corpus has been the subject of litigation before this Court on a number of occasions. In *In re Stevens*, 28 N.C. App. 471, 472, 221 S.E.2d 839, 839-40 (1976), an incarcerated individual sought habeas corpus relief after a Department of Correction disciplinary hearing committee found him "guilty" of "involvement in a[n] . . . altercation in which a fellow inmate

---

3. In his brief, Defendant concedes that each of these three claims, reduced to their essence, amount to an assertion that the Parole Commission's decision to terminate his MAPP contract and deny his request for release on parole worked an unconstitutional deprivation of liberty without due process of law. As a result, we will focus the discussion in the remainder of this opinion on the legal claim that Defendant has actually advanced on appeal rather than separately analyzing each of the theories enunciated in his initial habeas corpus petition.

was burned, purportedly deliberately," and sanctioned him by imposing "disciplinary segregation for seven to fifteen days, suspended for six months, and by recalculation of his correctional status from honor grade to 'A' grade." In holding that the trial court lacked the authority to issue the requested writ, this Court noted that the "defendant was [dis] satisfied with an essentially administrative determination whereby his correctional status was affected adversely" and held that "the difficult problems of when a person should be released and under what circumstances turn on analysis of internal correctional policy," "lie within the sole administrative jurisdiction of our State governmental departments," and "are not, barring a clear instance of constitutional infirmity, subjects appropriate for judicial scrutiny." *Id.* at 474, 221 S.E.2d 840-41 (citing *Goble v. Bounds*, 281 N.C. 307, 312, 188 S.E.2d 347, 350 (1972) (stating that "[w]hether the prisoner in this case is entitled to honor grade status, work release, or parole involves policy decisions which should be decided by the Department of Correction and the Board of Paroles," which "are charged with the duty and are properly given [the] means of discharging it not available to the courts")). In *Hoffman v. Edwards*, 48 N.C. App. 559, 560, 269 S.E.2d 311, 312 (1980), an inmate who had been "charged with [and convicted of] assault, failure to obey an order, and possession of funds in excess of the authorized amount" and "demoted to closed custody and placed in intensive management by a reclassification subcommittee of the Division of Prisons" sought habeas corpus relief. In rejecting the inmate's request, we pointed out that his "grievance falls within the jurisdiction of the Inmate Grievance Commission" and that "the record does not show that he filed a complaint with the Inmate Grievance Commission." *Id.* at 563, 269 S.E.2d at 313. As a result, we held "that the trial court did not have jurisdiction to issue a writ of habeas corpus prior to [the inmate's] exhaustion of his administrative remedies." *Id.* at 564, 269 S.E.2d at 314.[4] Finally, in *Freeman v. Johnson*, this Court addressed a situation in which, following a change in the membership of the Parole Commission, an inmate "was notified . . . that the Commission had rescinded his [MAPP] contract" and sought habeas corpus relief. 92 N.C. App. 109, 110, 373 S.E.2d 565,

---

4. Although the State implies that we should decline to follow *Hoffman*, in which we noted that N.C. Gen. Stat. § 17-33(2) allowed an incarcerated individual to obtain discharge despite having originally been imprisoned pursuant to a valid judgment, we lack the authority to act on this suggestion even if we were inclined to do so. *In re Appeal of Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (stating that, "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court").

565 (1988). In rejecting the inmate's claim, we noted that "[t]he difficulty with [the inmate's] position lies in the fact that the [MAPP] program is entirely an administrative function" and that "the revocation of his contract was an administrative decision" and held that the inmate's "relief for rescission of his [MAPP] contract must come through administrative procedures before the Division of Prisons and the Parole Commission" given that "[h]abeas corpus is not an appropriate vehicle for obtaining judicial review of the Parole Commission's decision, absent a clear violation of constitutional rights." *Id.* at 110-11, 373 S.E.2d at 566.[5] As a result, habeas corpus relief is not available in connection with an incarcerated individual's challenge to an administrative decision, such as the denial of parole or the rescission of a MAPP contract, unless the inmate has exhausted any available administrative remedies and unless some clear constitutional violation has occurred.[6]

Although Defendant appears to have exhausted any available administrative remedies and asserts that his continued detention results from a "clear violation of constitutional rights," the trial court properly denied Defendant's application because "no probable ground for relief [was] shown in [his] application." N.C. Gen. Stat. § 17-4(4).[7] N.C. Gen. Stat. § 17-7 clearly places the burden on the applicant to make an evidentiary forecast establishing that he or she is entitled to habeas corpus relief. In this case, the required evidentiary forecast must, of necessity, provide

---

5. The fact that the applicant in *Freeman* did not challenge the constitutionality of his continued incarceration precludes us from accepting the State's contention that this case is indistinguishable from and controlled by *Freeman*.

6. Although the State argues that habeas corpus is only available for the purpose of challenging the trial court's jurisdiction to enter the underlying judgment upon which his or her detention is predicated, that contention is undercut by N.C. Gen. Stat. § 17-33(2), which clearly allows the prosecution of an application for the issuance of a writ of habeas corpus when the applicant, although originally incarcerated in a lawful manner, has become entitled to relief as the result of subsequent developments. Similarly, although the State argues that the only relief available in a habeas corpus proceeding is discharge from incarceration and that Defendant is seeking to have further proceedings conducted rather than to be discharged, the clear purpose for which Defendant has sought to have further proceedings conducted is to establish his entitlement to discharge. As a result, neither of these arguments have merit.

7. Admittedly, the trial court summarily denied Defendant's application pursuant to N.C. Gen. Stat. § 17-4(2) rather than N.C. Gen. Stat. § 17-4(4). However, "[a] correct decision of a lower court will not be disturbed on review simply because an insufficient or superfluous reason is assigned," since "[t]he question for review is whether the ruling of the trial court was correct and not whether the reason given therefor was sound or tenable." *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650 (citing *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957)), *cert. denied*, 484 U.S. 916, 108 S. Ct. 267, 98 L. Ed. 2d 224 (1987).

a colorable basis for concluding that Defendant's claim to have a protected liberty interest in his release from confinement in accordance with the provisions of his MAPP contract has merit. Defendant has not made the required showing.

"While no State may 'deprive any person of life, liberty, or property, without due process of law,' " "only a limited range of interests fall within this provision," with there being two sources from which such interests can arise – "the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 868-69, 74 L. Ed. 2d 675, 685 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 223-27, 96 S. Ct. 2532, 2538-40, 49 L. Ed. 2d 451, 458-61 (1976)). In view of the fact that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence," "[w]hatever liberty interest exists is . . . a state interest created by [state] law." *Swarthout v. Cooke*, __ U.S. __, __, 131 S. Ct. 859, 862, 178 L. Ed. 2d 732, 736 (2011). Thus, the fundamental question that must be resolved in evaluating the sufficiency of Defendant's initial application for the issuance of a writ of habeas corpus is the extent, if any, to which Defendant adequately demonstrated the ability to establish the existence of a protected liberty interest arising from the provisions of his MAPP contract.

A protected liberty interest must rest upon something more than " 'an abstract need or desire' " and must, for that reason, stem from " 'a legitimate claim of entitlement' " rather than " 'a unilateral expectation.' " *Greenholtz v. Chairman, Inmatese of Neb. Penal and Correctional Complex*, 442 U.S 1, 7, 99 S. Ct. 2100, 2103-04, 60 L. Ed. 2d 668, 675 (1979) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548, 561 (1972)). The United States Supreme Court has determined that a protected liberty interest in obtaining release on parole existed under state statutes providing that, " '[s]ubject to the following restrictions, the board shall release on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is [a] reasonable probability that the prisoner can be released without detriment to the prisoner or to the community,' " *Board of Pardons v. Allen*, 482 U.S. 369, 376, 107 S. Ct. 2415, 2420, 96 L. Ed. 2d 303, 311-12 (1987) (quoting Mont. Code. Ann. § 46-23-201 (1985)) (omissions in original), and that the Board of Parole " 'shall order [a committed offender's] release unless it is of the opinion that his release should be deferred because . . . (a) [t]here is a substantial risk that he will not conform to the conditions of parole; (b) [h]is release would depreciate the seriousness of his crime or promote disrespect for law; (c) [h]is release would have a substantially adverse

effect on institutional discipline; or (d) [h]is continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.' " *Greenholtz*, 442 U.S. at 11, 99 S. Ct. at 2106, 60 L. Ed. 2d at 678 (quoting Neb. Rev. Stat. § 83-1, 114(1) (1976)). Thus, an individual has a protected liberty interest in obtaining release on parole in the event that he or she can establish an entitlement to be released after satisfying certain criteria.[8]

Although Defendant alleged that his MAPP contract required his release in the event that he complied with the terms and conditions set out in that document[9] and argues that this fact provided him with a liberty interest in being released on parole which could not be invalidated without due process, we conclude that he has failed to present adequate factual support for this contention. Admittedly, Defendant did attach a portion of his MAPP agreement to his application. However, the document attached to Defendant's application is clearly incomplete. More specifically, the first page states that "the Undersigned Participant agrees to the conditions set forth in this agreement and has read and understands the Statement of Procedures incorporated herein." In addition, the same document states that "[t]he Undersigned officials of the Division of Prisons and the Parole Commission with lawful authority to fulfill the Conditions set forth in this agreement shall do so if the Participant fulfills the conditions in Sections I and IV." However, neither the Statement of Procedures nor the conditions contained in Section IV are attached to Defendant's application. For that reason, Defendant

---

8. Although Defendant argues that this "mandatory language" approach utilized in *Allen* and *Greenholtz* was rejected in *Sandin v. Conner*, 515 U.S. 472, 480-85, 115 S. Ct. 2293, 2298-2300, 132 L. Ed. 2d 418, 427-30 (1995), the United States Supreme Court has described the method of analysis adopted in *Sandin* as applicable in evaluating "the existence of a protected state-created liberty interest in avoiding restrictive conditions of confinement," *Wilkinson v. Austin*, 545 U.S. 209, 223, 125 S. Ct. 2384, 2394, 162 L. Ed. 2d 174, 190 (2005), and has cited *Allen* and *Greenholtz* in discussing whether a particular circuit court decision constituted "a reasonable application of our cases." *Swarthout*, __ U.S. at __, 131 S. Ct. at 861, 178 L. Ed. 2d at 736. As a result, we believe that the approach discussed in the text does, in fact, describe the appropriate approach for use in ascertaining whether a protected liberty interest arising from state law exists in the parole-related context.

9. In his brief, Defendant argues that his constitutionally protected liberty interest arose from the fact that the Division of Prisons and the Parole Commission solicited individuals for the MAPP program and granted them a fixed release date. However, in the absence of adequate support for the contention that Defendant's "fixed release date" was not subject to alteration in the unlimited discretion of the Parole Commission, we do not believe that the factors upon which Defendant relies suffice to afford him a constitutionally protected liberty interest in obtaining release on parole.

has failed to forecast the existence of evidence tending to show that the Division of Prisons and the Parole Commission were, as Defendant alleges,[10] required to release him in the event that he complied with the terms and conditions of his MAPP contract. As a result, the information contained in Defendant's petition does not suffice to show that the Parole Commission acted inconsistently with Defendant's MAPP contract when it revoked that contract and declined to release Defendant on parole.[11]

As we have already noted, the validity of Defendant's challenge to the lawfulness of the trial court's order rests on the assumption that the Parole Commission violated Defendant's MAPP contract when it terminated that agreement and declined to release Defendant on parole.[12] In view of the fact that Defendant failed to provide us with sufficient information to establish the accuracy of the factual predicate underlying his challenge to the trial court's order, he has failed to make the preliminary showing needed to preclude summary denial of his application. *State v. Rollins*, __ N.C. App. __, __, 734 S.E.2d 634, 636 (2012) (holding that the trial court did not err by summarily denying defendant's motion for appropriate relief given that "[t]here is insufficient evidence to determine

---

10. Admittedly, Defendant has asserted in the text of his habeas corpus petition that his MAPP contract required that he be released on parole in the event that he complied with its provisions. However, given that N.C. Gen. Stat. § 17-7(3) requires an applicant to attach a copy of any "warrant or other process" by virtue of which the applicant is detained or provide an adequate explanation for failing to attach such a document and given that, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording or photograph is required," N.C. Gen. Stat. § 8C-1, Rule 1002, we do not believe that a mere generalized description of the MAPP contract like that contained in Defendant's application is sufficient to preclude summary denial of an application for the issuance of a writ of habeas corpus.

11. As an aside, we note that the applicant in *Freeman*, 92 N.C. App. at 109, 373 S.E.2d at 565, which is the only other appellate decision in this jurisdiction addressing the extent to which an individual denied release after allegedly complying with a MAPP contract was entitled to relief in a habeas corpus proceeding, attached the applicable policy and procedures manual to his petition, thereby providing the judicial system with an opportunity to review the validity of his description of the nature and contents of the relevant MAPP contract.

12. In his principal and reply brief, Defendant argues in reliance upon the Supreme Court's decision in *Jones v. Keller*, 364 N.C. 249, 254, 698 S.E.2d 49, 54 (2010), *cert. denied*, __ U.S. __, 131 S. Ct. 2150, 179 L. E.2d 935 (2011), that the Parole Commission has not been given "carte blanche" to determine when incarcerated individuals are entitled to release and that the judicial branch has a constitutional obligation to determine when the Parole Commission's actions exceed applicable constitutional limitations. Although these assertions are certainly true, they shed little light upon the extent to which the judicial power to rein in allegedly unconstitutional administrative actions should be exercised in any particular case, including this one.

whether juror misconduct occurred as defendant's motion and Bossard's affidavit merely contained general allegations and speculation"); *State v. Yonce*, 207 N.C. App. 658, 669, 701 S.E.2d 264, 271 (2010) (holding that the trial court did not err by summarily denying Defendant's motion for appropriate relief because the affidavits provided in support of his ineffective assistance of counsel claim "fail[ed] to demonstrate that the documentation upon which he now relies could have been produced" at trial), *disc. review denied*, 365 N.C. 80, 706 S.E.2d 233 (2011); *State v. Aiken*, 73 N.C. App. 487, 501, 326 S.E.2d 919, 927 (holding that the trial court did not err by summarily denying the defendant's motion for appropriate relief given that the "[d]efendant filed no supporting affidavit and offered no evidence beyond the bare allegations" in his motion), *disc. review denied*, 313 N.C. 604, 332 S.E.2d 180 (1985). As a result, given that Defendant failed to establish that he had a colorable claim to be entitled to be discharged from custody based on an alleged deprivation of a constitutionally protected liberty interest without due process of law, the trial court did not err by summarily denying Defendant's application for the issuance of a writ of habeas corpus.[13]

### III. Conclusion

Thus, for the reasons set forth above, the trial court did not err by summarily denying Defendant's habeas corpus petition. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges BRYANT and ELMORE concur.

---

13. Although the State did attach a version of the relevant policies and procedures document to its response to Defendant's *certiorari* petition, the document in question was not before the trial court at the time that it summarily denied Defendant's application and cannot, for that reason, be utilized in evaluating the validity of Defendant's challenge to the lawfulness of the trial court's order. We do, however, note that the document in the record specifically states that "[t]he Parole Commission or the Division of Prisons has the option of terminating the MAPP at any time" upon notice to "all parties to the agreement" accompanied by a statement of "the reasons for such action." Dep't of Correction Policy & Procedures § E.1705(a) (2012). In the event that the quoted language was, in fact, applicable to Defendant's MAPP contract, the Parole Commission appears to have had the authority to unilaterally revoke Defendant's MAPP contract as a matter of North Carolina law at any time prior to Defendant's release.