IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-180

 No. COA20-680

 Filed 4 May 2021

 Wake County, No. 20CRS1056

 STATE OF NORTH CAROLINA

 v.

 PHILIP BRANDON DAW, Defendant.

 Appeal by Defendant from an order entered on 15 June 2020 by Judge Craig

 Croom in Wake County Superior Court. Heard in the Court of Appeals 9 February

 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde, for the State.

 Tin Fulton Walker & Owen, PLLC, by Jim Melo, and Goodman, Carr,
 Laughrun, Levine & Green, by W. Rob Heroy, for the Petitioner.

 Erwin Byrd for Amicus Curiae North Carolina Advocates for Justice.

 JACKSON, Judge.

¶1 Under review is the trial court’s summary denial of a petition for habeas

 corpus. Phillip Brandon Daw (“Petitioner”) alleges in his petition for habeas corpus

 that under N.C. Gen. Stat. § 17-33(2), because of an “act, omission or event, which

 has taken place after[] [his imprisonment], [] [he] has become entitled to be

 discharged.” N.C. Gen. Stat. § 17-33(2) (2019). While there is no appeal of right from
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 the denial of a petition for habeas corpus, Chavez v. McFadden, 374 N.C. 458, 470,

 843 S.E.2d 139, 148 (2020), we granted a petition for certiorari filed by Petitioner to

 review the trial court’s order. After careful review, we affirm the order of the trial

 court.

 I. Background

¶2 On 1 May 2019, a Lenoir County grand jury indicted Petitioner with three

 felony counts of obtaining property by false pretenses. Petitioner pleaded not guilty

 to these charges. A jury convicted him of all three counts on 24 September 2019 in

 Lenoir County Superior Court. The trial court sentenced Petitioner to seven to 18

 months in prison for each count and ordered that the sentences run consecutively.

¶3 Petitioner was then indicted again on two felony counts of obtaining property

 by false pretenses on 22 October 2018. On 26 November 2018, he was indicted on

 another felony count of obtaining property by false pretenses. On 10 December 2018,

 he was indicted on yet another felony count of obtaining property by false pretenses.

 He pleaded guilty to these new charges and was sentenced to six to 17 months in

 prison for the three counts from the October and December indictments, with the

 sentence to run concurrently with his sentence for the three charges of which he was

 convicted by the Lenoir County jury. Petitioner was sentenced to another concurrent

 sentence of eight to 19 months for the count from the November indictment.

¶4 In March of 2020, the World Health Organization declared that the spread of
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 the novel coronavirus known as COVID-19 had reached pandemic proportions.1 In

 what would be the first of many executive orders related to COVID-19, our Governor

 declared a state of emergency, taking numerous steps to coordinate a governmental

 response and limit the spread of the virus. See Exec. Order No. 116 (2020). As the

 first recital of that executive order states, “COVID-19 is a respiratory disease that

 can result in serious illness or death by the SARS-CoV-2 virus, . . . a new strain of

 coronavirus[.]” Id.

¶5 Petitioner was serving his sentence in prison at that time. In the earlier part

 of the month, he was serving his sentence at the Craven Correctional Institution, in

 Craven County, North Carolina. He was then transferred to Harnett Correctional

 Institution in Harnett County on 24 March 2020.

¶6 The North Carolina Department of Public Safety (“DPS”) is the agency that

 administers prisons in our state. See N.C. Gen. Stat. § 148-4 (2019). The principal

 executive officer of that agency is the Secretary. See id. Under N.C. Gen. Stat. § 148-

 4, the Secretary of DPS is authorized to “extend the limits of the place of confinement

 of a prisoner, . . . [to] [p]articipate in community-based programs of rehabilitation,

 . . . and other programs determined by the Secretary . . . to be consistent with the

 1 See WHO Director-General’s Opening Remarks at the Media Briefing on COVID-19 -

 11 March 2020, World Health Organization, https://www.who.int/director-
 general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-
 covid-19---11-march-2020 (last visited March 18, 2021).
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 prisoner’s rehabilitation and return to society[.]” Id. On 13 April 2020, the Secretary

 of DPS announced that he was invoking this statutory authority to “extend the limits

 of confinement [] of incarcerated persons[,] allowing certain individuals to continue

 serving their sentence outside of a DPS prison facility, but under the supervision of

 community correction officers.”

¶7 By the summer of 2020, the pandemic had worsened.2 News of it had also

 become more widespread.3 On 15 June 2020, Petitioner filed a petition for habeas

 corpus in Wake County Superior Court alleging that his continued imprisonment

 during the pandemic violated the guarantee against cruel and unusual punishment

 contained in the Eighth Amendment to the United States Constitution and the

 guarantee against cruel or unusual punishment in Article 1, § 27 of the North

 Carolina Constitution. The trial court summarily denied the petition the same day.

¶8 Petitioner filed a petition for a writ of certiorari to review the trial court’s

 summary denial of his petition for habeas corpus on 16 June 2020. It was granted by

 2 Daily Updates of Totals by Week and State, COVID-19 Data from the National Center

 for Health Statistics, Centers for Disease Control and Prevention,
 https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm (last visited March 19, 2021).
 3 See, e.g., As New Coronavirus Cases Hit Another Record in the U.S., Some States

 Delay Reopenings, The New York Times (June 25, 2020),
 https://www.nytimes.com/2020/06/25/world/coronavirus-updates.html (last visited March 19,
 2020) (“The United States on Thursday reported more than 41,000 new coronavirus cases, a
 record total for the second straight day, as a nationwide sense of urgency grew and caseloads
 soared in Southern and Western states that were far removed from the worst early
 outbreaks.”).
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 our Court on 9 July 2020. Petitioner then filed a motion for a peremptory setting of

 the case on 16 December 2020. That motion was also granted by our Court on 17

 December 2020.

¶9 As noted above, oral argument in this case was heard on 9 February 2021. Six

 days later, Petitioner was released from prison.4 He is now serving the remainder of

 his sentence outside of prison under the Extended Limits of Confinement Program

 instituted by DPS due to COVID-19.

 II. Jurisdiction

¶ 10 Our Supreme Court has held that “[p]roceedings in habeas corpus, the object

 of which is to release a person from illegal restraint, must necessarily be summary to

 be useful, and if action could be arrested by an appeal upon the part of the State, the

 great writ of liberty would be deprived of its most beneficial results.” In re Williams,

 149 N.C. 436, 437, 63 S.E. 108, 109 (1908). Thus, while “no appeal as of right lies

 from an order entered in a habeas corpus proceeding, appellate review of such orders

 is available ‘by petition for certiorari addressed to the sound discretion of the

 appropriate appellate court.’” Chavez, 374 N.C. at 470, 843 S.E.2d at 148 (quoting

 State v. Niccum, 293 N.C. 276, 278, 238 S.E.2d 141, 143 (1977)). “Such a petition

 4 Under North Carolina Rule of Evidence 201, we take judicial notice of this fact from

 the Department of Public Safety website’s offender search results. See N.C. Gen. Stat. § 8C-
 1, Rule 201 (2019). See, e.g., State v. Harwood, 243 N.C. App. 425, 427 n.2, 777 S.E.2d 116,
 118 n.2 (2015) (taking judicial notice of same).
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 should be filed with the clerk of the appellate court to which an appeal of right might

 have been taken from the judgment imposing the sentence which is the subject of

 inquiry in the habeas corpus proceeding.” Niccum, 293 N.C. at 278, 238 S.E.2d at

 143. In capital cases, the appropriate appellate court is the Supreme Court. N.C. R.

 App. P. 21(e). “In all other cases such petitions shall be filed in and determined by

 the Court of Appeals[.]” Id.

¶ 11 As noted above, Petitioner filed his petition for habeas corpus in Wake County

 Superior Court on 15 June 2020 and the trial court denied it the same day. The next

 day, Petitioner filed a petition for writ of certiorari with our Court requesting review

 of the trial court’s denial of his petition for habeas corpus. We granted the petition

 for certiorari. The trial court’s order summarily denying the petition for habeas

 corpus is therefore properly before us.

 III. Mootness

¶ 12 Petitioner has been released from prison and is now serving the remainder of

 his sentence in the community. Petitioner has therefore received the relief requested

 in his petition and this case is moot.

¶ 13 Generally speaking,

 North Carolina appellate courts do not decide moot cases.
 A case is “moot” when a determination is sought on a
 matter which, when rendered, cannot have any practical
 effect on the existing controversy. In state courts the
 exclusion of moot questions from determination is not
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 based on a lack of jurisdiction but rather represents a form
 of judicial restraint. Our purpose in exercising such
 restraint is to ensure that this Court does not determine
 matters purely speculative, enter anticipatory judgments,
 declare social status, deal with theoretical problems, give
 advisory opinions, answer moot questions, adjudicate
 academic matters, provide for contingencies which may
 hereafter arise, or give abstract opinions. As a general
 proposition, cases that have become moot should be
 dismissed.

 Chavez, 374 N.C. at 467, 843 S.E.2d at 146-47 (internal marks and citation omitted).

¶ 14 However, “[t]he mootness doctrine is subject to exceptions, including the public

 interest exception, . . . and the ‘capable of repetition, yet evading review’ exception[.]’”

 Id., 843 S.E.2d at 147. “Under the ‘public interest’ exception to mootness, an

 appellate court may consider a case, even if technically moot, if it involves a matter

 of public interest, is of general importance, and deserves prompt resolution.” Chavez

 v. Carmichael, 262 N.C. App. 196, 203, 822 S.E.2d 131, 137 (2018) (“Carmichael”)

 (internal marks and citation omitted), vacated and reversed in part on other grounds

 sub nom. Chavez v. McFadden, 374 N.C. 458, 843 S.E.2d 139 (2020). “Our appellate

 courts have previously applied the ‘public interest’ exception to otherwise moot cases

 of clear and far-reaching significance, for members of the public beyond just the

 parties in the immediate case.” Id. at 203-04, 822 S.E.2d at 137 (citation omitted).

¶ 15 On the other hand,

 [a] case is “capable of repetition, yet evading review,” when
 the underlying conduct upon which the relevant claim rests
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 is necessarily of such limited duration that the relevant
 claim cannot be fully litigated prior to its cessation and the
 same complaining party is likely to be subject to the same
 allegedly unlawful action in the future.

 Chavez, 374 N.C. at 467-68, 843 S.E.2d at 147 (citation omitted). In the habeas

 context, “the ‘capable of repetition, yet evading review’ exception to the mootness

 doctrine is technically not available in . . . the absence of any indication that [the]

 petitioner[] [is] likely to find themselves in the same situation . . . in the future[.]” Id.

 at 468-69, 843 S.E.2d at 147-48.

¶ 16 At oral argument, counsel for Petitioner argued that the public interest

 exception to the mootness doctrine should apply in this case, if Petitioner were to be

 released from prison after oral argument but before we were able to issue an opinion.

 Petitioner was then released from Harnett County Correctional Institution to serve

 the remainder of his sentence in the community six days later.

¶ 17 We agree with Petitioner that the public interest exception to the mootness

 doctrine applies here. There are a number of petitions pending with our Court that

 have been held in abeyance until we issue an opinion in this case. Resolution of the

 questions presented by this appeal on the merits would therefore clearly affect

 “members of the public beyond just the parties in the immediate case.” Carmichael,

 262 N.C. App. at 203-04, 822 S.E.2d at 137. Accordingly, we hold that the public

 interest exception applies and will proceed to address the merits of the case.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 IV. Standard of Review

¶ 18 “The decision concerning whether an application for a writ of habeas corpus

 should be summarily denied or whether additional proceedings should be conducted

 based upon the issuance of the requested writ is . . . a pure question of law.” State v.

 Leach, 227 N.C. App. 399, 407, 742 S.E.2d 608, 613, disc. rev. denied, 372 N.C. 222,

 747 S.E.2d 543 (2013). Accordingly, our review of the trial court’s denial of a petition

 for habeas corpus is de novo. Id. “Under a de novo review, the court considers the

 matter anew and freely substitutes its own judgment for that of the lower tribunal.”

 State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal marks

 and citation omitted).

 V. Summary Denial of a Petition for Habeas Corpus Alleging that an “Act,
 Omission, or Event” Has Occurred Entitling the Party to Discharge

¶ 19 This case presents the question of whether a trial court errs when it summarily

 denies a petition for habeas corpus when the petition alleges that an “act, omission,

 or event” has occurred that entitles an incarcerated person to be discharged from

 custody. We hold that summary denial of such a petition is permissible, and that the

 trial court did not err in summarily denying the petition for habeas corpus in this

 case.

¶ 20 Our consideration of this question proceeds in four parts. First, we review the

 origins, evolution, and limits of the writ of habeas corpus under North Carolina law.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

Second, we parse the language of the statutory scheme governing petitions for habeas

corpus in our General Statutes. Third, we review the trial court’s order, which

summarily denied the habeas petition without expressly stating whether an

evidentiary proceeding was necessary.5 Fourth, we turn to this question, and hold

that the allegations in the petition and materials submitted in support thereof did

not require the trial court to conduct an evidentiary hearing. As discussed in further

detail infra, the allegations in the petition and the accompanying affidavits and

materials did not create a forecast of admissible evidence individualized to the

specific circumstances of Petitioner’s case that an “act, omission, or event” had

occurred that entitled Petitioner to be discharged. For this reason, we hold that

summary denial of the petition was proper. Accordingly, we affirm the order of the

 5 The trial court’s summary denial of the petition is itself an implicit resolution of this

issue, of course. The absence of an express resolution of the issue in the order also is not
entirely surprising. In the section of the current version of the North Carolina Superior Court
Judges’ Benchbook related to habeas corpus, only the general rule cited by the trial court in
its order—N.C. Gen. Stat. § 17-4—is mentioned. See Jessica Smith, Habeas Corpus 3 (Mar.
2014), in North Carolina Superior Court Judges’ Benchbook (noting that a petition for habeas
corpus should be summarily denied when the court determines that the party is imprisoned
“by virtue of a final order, judgment, or decree of a competent tribunal, or by virtue of an
execution issued upon such final order, judgment or decree”) (quoting N.C. Gen. Stat. § 17-
4). The publisher of the Benchbook recently issued a bulletin noting several “well-recognized
exceptions to [this] general rule[,]” including N.C. Gen. Stat. § 17-33(2), which provides for
discharge “[w]here, . . . by some act, omission or event, . . . [a] party has become entitled to
be discharged.” See Ian A. Mance, “Securing the Release of People in Custody in North
Carolina During the COVID-19 Pandemic,” UNC School of Government, No. 2020/02 (June
2020) (quoting N.C. Gen. Stat. § 17-33(2)). However, as noted above, this exception is not
mentioned in the Benchbook.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 trial court.

 A. Origins, Evolution, and Limits of the Writ of Habeas Corpus under
 North Carolina Law

 1. Historic Development

¶ 21 The writ of habeas corpus under North Carolina law originates from the law of

 England. In re Bryan, 60 N.C. 1, 42 (1863). At common law, “every court of record of

 superior jurisdiction ha[d] power to issue the writ of habeas corpus[.]” Id. The writ

 “ar[ose] from the obligation of the king to protect all of his subjects in the enjoyment

 of their right of personal liberty, and for this purpose to inquire by his courts into the

 condition of any of his subjects.” Id. Under English law,

 any person, whether imprisoned on a criminal charge or
 restrained of his liberty for any other cause, had a right
 during the sitting of the courts, by application to the court,
 and during the vacation by application to any one of the
 judges, to have the cause of his being imprisoned or
 restrained of his liberty inquired into without delay.

 Id. at 44.

¶ 22 North Carolina’s original habeas corpus act was “taken from [] two English

 statutes[.]” Id. at 43. Like English law, North Carolina’s earliest habeas statutes

 “require[d] . . . any judge of the Supreme or Superior Court . . . to issue the writ of

 habeas corpus on the application of any person imprisoned on a criminal charge or

 otherwise restrained of his liberty.” Id. From English law, the common law of North

 Carolina thus received
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 the great Writ of Right, habeas corpus to bring any citizen
 alleged to be wrongfully imprisoned or restrained of his
 liberty, before the Court, with the cause of his arrest and
 detention, that the matter may be inquired of and the party
 set at liberty, if imprisoned against law.

 Id. at 45. See also John V. Orth & Paul Martin Newby, The North Carolina State

 Constitution 75 (2013) (noting the reception of England’s Habeas Corpus Act of 1679

 by North Carolina before the adoption of the Constitution of 1776).

¶ 23 The Declaration of Rights of the North Carolina Constitution of 1776 did not

 expressly reference the writ, see id. at 20, but guaranteed the right of “every freeman

 restrained of his liberty[,] . . . to inquire into the lawfulness thereof, and to remove

 the same, if unlawful[,]” N.C. Const., Declaration of Rights § 13 (1776). The

 Constitution of 1868 expanded this guarantee to “every person restrained of his

 liberty[,]” N.C. Const. art. I, § 18 (1868) (emphasis added), and added an express

 guarantee to the writ for the first time, id. § 21 (“The privilege of the writ of habeas

 corpus shall not be suspended.”). These constitutional guarantees were codified in

 the General Statutes in 1868. See, e.g., Harkins v. Cathey, 119 N.C. 650, 664, 26 S.E.

 136, 140 (1896) (Avery, J., dissenting) (“[W]hen the Constitution [of 1868] enjoined

 upon the Legislature the duty of providing a remedy, . . . they passed the statute[.]”);

 N.C. Gen. Stat. § 17-1 (2019) (“Every person restrained of his liberty is entitled to a

 remedy to inquire into the lawfulness thereof, and to remove the same, if unlawful;

 and such remedy ought not to be denied or delayed.”). The United States Supreme
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 Court observed that same year that “[t]he great writ of habeas corpus has been for

 centuries esteemed the best and only sufficient defence of personal freedom.” Ex

 Parte Yerger, 75 U.S. 85, 95 (1868) (emphasis in original).

¶ 24 Before the adoption of the Constitution of 1868, the authority of North Carolina

 courts to issue the writ was understood to be inherent in the judicial power. See In

 re Bryan, 60 N.C. at 43. Our Supreme Court had reasoned that the very

 establishment of a Supreme Court . . . invests it with power
 to inquire by means of this great Writ of Right . . . and if
 . . . the Legislature had in express terms denied the Court
 the power to issue this writ . . . , such prohibition would
 have been void and of no effect.

 Id. See also id. at 44-45 (“Suppose, for the sake of argument, it was necessary that

 the power should be conferred on the Supreme Court by statute[,] we are of opinion

 that it is conferred by the Act establishing the Court.”). After the adoption of the

 Constitution of 1868, however, this understanding evolved. In re Schenk, 74 N.C.

 607, 608 (1876) (“The power to issue the writ of habeas corpus is derived from the

 Constitution . . . , and the Act of the Legislature for enforcing that provision[.]”).

 Thus, though the writ originated from the reception of English law by North Carolina

 and predates the Constitution of 1776, since the constitutionalization of the writ in

 1868 and amendment of the habeas statutes that year, the authority of trial courts

 to issue the writ has been held to derive from the Constitution and General Statutes.

 See id.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

¶ 25 The Declaration of Rights of the North Carolina Constitution of 1971, our

 current state Constitution, provides that “[e]very person restrained of his liberty is

 entitled to a remedy to inquire into the lawfulness thereof, and to remove the

 restraint if unlawful, and that remedy shall not be denied or delayed.” N.C. Const.

 art. I, § 21. Like § 21 of the Constitution of 1868, § 21 of the Constitution of 1971

 contains an express guarantee to the writ and against its suspension. See id. Thus,

 Article I, §§ 18 and 21 of the Constitution of 1868 were combined and strengthened

 in Article I, § 21 of the Constitution of 1971, replacing “the frequently used

 subjunctive mood . . . [with] the imperative . . . to make clear that the provisions . . .

 are commands and not mere admonitions.” John L. Sanders, The Constitutional

 Development of North Carolina, in North Carolina Government 1585-1974: A

 Narrative and Statistical History 803 (John L. Cheney, Jr., ed. 1975).6

¶ 26 The scope of habeas corpus jurisdiction has also evolved. “Traditionally, the

 writ of habeas corpus was thought to issue only to ascertain whether the court which

 imprisoned the person seeking the relief had jurisdiction of the matter or whether the

 6 Compare N.C. Const. art. I, § 18 (1868) (“Every person restrained of his liberty, is

 entitled to a remedy to enquire into the lawfulness thereof and to remove the same, if
 unlawful, and such remedy ought not be denied or delayed.”) with N.C. Const. art. I, § 21
 (1971) (“Every person restrained of his liberty is entitled to a remedy to inquire into the
 lawfulness thereof, and to remove the restraint if unlawful, and that remedy shall not be
 denied or delayed.”) (emphasis added). Section 21 of the Constitution of 1971 is codified at
 N.C. Gen. Stat. §§ 17-1, -2. Hoffman v. Edwards, 48 N.C. App. 559, 561, 269 S.E.2d 311, 312
 (1980).
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 court had exceeded its power.” Hoffman v. Edwards, 48 N.C. App. 559, 561-62, 269

 S.E.2d 311, 312 (1980) (citation omitted). However, through the enactment of N.C.

 Gen. Stat. § 17-33(2), our General Assembly expanded “the scope of a court’s habeas

 corpus jurisdiction to include those instances ‘[w]here, though the original

 imprisonment was lawful, yet by some act, omission or event, which has taken place

 afterwards, the party has become entitled to be discharged.’” In re Stevens, 28 N.C.

 App. 471, 474, 221 S.E.2d 839, 840 (1976) (quoting N.C. Gen. Stat. § 17-33(2)). Thus,

 while “at common law, [the writ] was not thought to issue to review all deprivations

 of liberty[,]” Hoffman, 48 N.C. App. at 563, 221 S.E.2d at 313, “it is clear now that the

 scope of a court’s habeas corpus jurisdiction is much broader[,]” id. at 562, 221 S.E.2d

 at 312. See also id. at 563, 221 S.E.2d at 313 (“It is only through legislative grace

 that the remedy has been extended.”).

¶ 27 However, “[t]hough obviously essential to the maintenance of civil liberty, the

 writ is not unlimited in its jurisdictional scope, utility and function.” In re Stevens,

 28 N.C. App. at 473, 221 S.E.2d at 840. It is not “allowed as a substitute for an appeal,

 and where an appeal lies, such course should be pursued.” In re Coston, 187 N.C.

 509, 512, 122 S.E. 183, 185 (1924). Moreover, “[w]hen the legislature has provided

 an effective administrative remedy, it is exclusive[,] . . . and [a] party . . . [must]

 exhaust his administrative remedies before resorting to the courts.” Hoffman, 48

 N.C. App. at 563, 269 S.E.2d at 313 (internal marks and citation omitted). N.C. Gen.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 Stat. § 148-11 specifically authorizes the Secretary of DPS to “adopt rules for the

 government of the State prison system[,]” including “rules that pertain to enforcing

 discipline[,]” N.C. Gen. Stat. § 148-11(a) (2019), and we have held that generally

 speaking, issues such as a prisoner’s “grade of conduct, privileges, disciplinary action

 and commendations are strictly administrative and not judicial matters[,]” In re

 Stevens, 28 N.C. App. at 474, 221 S.E.2d at 841 (internal marks and citation omitted).

 In other words,

 the difficult problems of when a person should be released
 and under what circumstances turn on analysis of internal
 correctional policy, and rightfully lie within the sole
 administrative jurisdiction of our State governmental
 departments, and are not, barring a clear instance of
 constitutional infirmity, subjects appropriate for judicial
 scrutiny.

 Id. (citation omitted).

 2. Modern Development: State v. Leach

¶ 28 No discussion of the origins and evolution of the writ of habeas corpus under

 North Carolina law would be complete if it did not include State v. Leach, 227 N.C.

 App. 399, 742 S.E.2d 608 (2013), our Court’s most significant recent decision on the

 subject. Leach involved a prisoner who was denied parole after entering into an

 agreement under the Mutual Agreement Parole Program (“MAPP”) and working on

 work release under the terms of the agreement for over a year. Id. at 401, 742 S.E.2d

 at 609-10. After the prisoner had performed substantially under the MAPP contract,
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 the Parole Commission notified him that it was terminating the contract and denying

 his parole based on “a substantial risk . . . [he] would not conform to reasonable

 conditions of parole and would engage in further criminal conduct.” Id. at 401, 742

 S.E.2d at 610 (internal marks omitted).

¶ 29 The prisoner thereafter filed a grievance challenging the termination of the

 contract and the denial of his parole but was unsuccessful. Id. He then petitioned

 the Moore County Superior Court for issuance of a writ of habeas corpus, alleging

 that the termination of the contract and denial of his parole violated his rights to due

 process and to be free from retroactive application of the criminal law. Id. at 401,

 409, 742 S.E.2d at 610, 614. The trial court, like the trial court in this case,

 summarily denied the petition, citing N.C. Gen. Stat. § 17-4(2).7 Id. at 401, 742 S.E.2d

 at 610.

¶ 30 Mr. Leach then petitioned our Court for certiorari to review the trial court’s

 summary denial of his petition for habeas corpus, which we granted. Id. at 402, 742

 S.E.2d at 610. After reviewing the relevant statutory provisions, we began our

 discussion with the observation that “[t]he summary nature of the proceedings to be

 7 This subsection provides the general rule referenced in the previous footnote, that a

 petition for habeas corpus is subject to summary denial if the party is “committed or detained
 by virtue of the final order, judgment or decree of a competent tribunal of civil or criminal
 jurisdiction, or by virtue of an execution issued upon such final order, judgment or decree.”
 N.C. Gen. Stat. § 17-4(2) (2019).
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 conducted following the return of a writ of habeas corpus reflects the fact that ‘their

 principal object [is] a release of a party from illegal restraint’ and that such

 proceedings would ‘lose many of their most beneficial results’ if they were not

 ‘summary and prompt.’” Id. at 404, 742 S.E.2d at 612 (quoting State v. Miller, 97

 N.C. 451, 454, 1 S.E. 776, 778 (1887)).

¶ 31 “However,” we reasoned, “the resulting proceedings should not be ‘perfunctory

 and merely formal’; instead, relevant facts, ‘when controverted, may be established

 by evidence like any other disputed fact.’” Id. (quoting In re Bailey, 203 N.C. 362,

 365-66, 166 S.E. 165, 166 (1932)). We also noted that “[t]he statutory provisions

 governing habeas corpus proceedings contain no indication that a trial judge must

 make findings of fact and conclusions of law in the course of determining whether an

 application for the issuance of a writ of habeas corpus should be summarily denied[,]”

 explaining that the “purpose sought to be achieved by requiring a trial court to make

 specific findings of fact and conclusions of law is to enable a reviewing court to

 determine the legal and factual basis for the trial court’s decision.” Id. at 405-06, 742

 S.E.2d at 612-13 (citation omitted). We held that the trial court’s determination of

 whether to summarily deny a petition for habeas corpus or conduct an evidentiary

 hearing on the petition must be based on “the face of the applicant’s application,

 including any supporting documentation,” and nothing more, and that in a summary

 denial of a petition for habeas corpus, no findings of fact or conclusions of law are
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 required. Id. at 406-07, 742 S.E.2d at 613.

¶ 32 On the merits, we affirmed the trial court’s summary denial of the petition, but

 for a different reason than the one given by the trial court. Id. at 413-15, 742 S.E.2d

 at 617-19. We noted at the outset of our merits discussion that

 [a]s a result of the fact that habeas corpus is available in
 instances in which, “though the original imprisonment was
 lawful, yet by some act, omission or event, which has taken
 place afterwards, the party has become entitled to be
 discharged,” N.C. Gen. Stat. § 17-33(2), the extent to which
 an imprisoned individual is entitled to challenge parole-
 related decisions by means of an application for the
 issuance of a writ of habeas corpus has been the subject of
 litigation before this Court on a number of occasions.

 Id. at 409, 742 S.E.2d at 615. We also reiterated that “habeas corpus relief is not

 available in connection with an incarcerated individual’s challenge to an

 administrative decision, . . . unless the inmate has exhausted any available

 administrative remedies and unless some clear constitutional violation has occurred.”

 Id. at 411, 742 S.E.2d at 616.

¶ 33 We went on to affirm the trial court’s summary denial of the petition because

 Mr. Leach had failed to make a threshold showing in his application that a material

 issue of fact existed as to whether an “act, omission, or event” had occurred entitling

 him to discharge. See id. at 413-15, 742 S.E.2d at 617-19. Although Mr. Leach had

 argued he had fully performed under the terms of the MAPP contract, we were unable

 to evaluate this argument based on the petition and materials submitted in support
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 thereof because a full copy of the MAPP contract had not been included. Id. 413-14,

 742 S.E.2d at 617-18. Thus, while Mr. Leach had appropriately exhausted his

 available administrative remedies, id. at 411, 742 S.E.2d at 616, we ultimately

 concluded that he had not provided the forecast of admissible evidence necessary to

 demonstrate an evidentiary hearing on his constitutional claims was required, see id.

 at 414, 742 S.E.2d at 618. Accordingly, we affirmed the order of the trial court,

 although not on the original basis cited in the trial court’s order—N.C. Gen. Stat.

 § 17-4(2).

 3. The State’s Argument Based on the Plain Language of N.C. Gen. Stat.
 § 17-33

¶ 34 Leach is directly relevant to the State’s primary argument in this case.

 Specifically, the State’s argument here is based on a reference in N.C. Gen. Stat. § 17-

 33 to “civil process.” The statute provides in relevant part that

 if it appears on the return to the writ that the party is in
 custody by virtue of civil process from any court legally
 constituted, or issued by any officer in the course of judicial
 proceedings before him, authorized by law, such party can
 be discharged only in one of the following cases:

 ...

 (2) Where, though the original imprisonment was
 lawful, yet by some act, omission or event, which has taken
 place afterwards, the party has become entitled to be
 discharged.

 N.C. Gen. Stat. § 17-33 (2019) (emphasis added).
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

¶ 35 The State argues that the reference to “civil process” in N.C. Gen. Stat. § 17-

 33 means that the statute does not apply to individuals who are imprisoned because

 of a conviction and sentence imposed for a violation of the criminal law. We disagree,

 and reject the State’s argument for three reasons: (1) it is contrary to our decision in

 Leach; (2) it is inconsistent with the language of § 17-33; and (3) it ignores the historic

 development of the writ of habeas corpus and the intent of the General Assembly

 expressed in § 17-33.

¶ 36 The State made a similar argument in Leach to the one it now makes. There,

 the State had suggested that we decline to follow Hoffman and disavow our

 observation that N.C. Gen. Stat. § 17-33(2) “allow[s] an incarcerated individual to

 obtain discharge despite having originally been imprisoned pursuant to a valid

 judgment.” 227 N.C. App. at 410 n.4, 742 S.E.2d at 615, n.4. We rejected this

 argument and instead concluded that “we lack[ed] the authority to act on [the State’s]

 suggestion[,]” id., citing our Supreme Court’s holding in In re Civil Penalty, 324 N.C.

 373, 379 S.E.2d 30 (1989). See id. at 384, 379 S.E.2d at 37 (“Where a panel of the

 Court of Appeals has decided the same issue, albeit in a different case, a subsequent

 panel of the same court is bound by that precedent, unless it has been overturned by

 a higher court.”).

¶ 37 While the State’s argument here is not the same argument that we expressly

 rejected in Leach, our holding in Leach requires us to reject it here. Accepting the
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 State’s argument that N.C. Gen. Stat. § 17-33 does not apply in criminal cases

 because the statute contains a reference to “civil process” would require us to overrule

 our decisions in Leach, In re Stevens, and Hoffman. See Leach, 227 N.C. App. at 409,

 742 S.E.2d at 615 (noting “the fact that habeas corpus is available in instances in

 which, ‘though the original imprisonment was lawful, yet by some act, omission or

 event, . . . the party has become entitled to be discharged’”); In re Stevens, 28 N.C.

 App. at 474, 221 S.E.2d at 840 (same); Hoffman, 48 N.C. App. at 562, 269 S.E.2d at

 312 (“Whatever the case may have been, it is clear now that the scope of a court’s

 habeas corpus jurisdiction is much broader [than at common law.]”). This is

 something we cannot do. In re Civil Penalty, 324 N.C. at 384, 379 S.E.2d at 37.

¶ 38 The State’s argument is also inconsistent with the language of § 17-33. As

 Petitioner’s counsel pointed out at oral argument, acceptance of the State’s argument

 based on the reference to civil process in § 17-33 would require us to ignore the second

 clause of the same sentence of the statute, which disjunctively provides for issuance

 of the writ in the alternative “by any officer in the course of judicial proceedings before

 him[.]” N.C. Gen. Stat. § 17-33 (2019). It is axiomatic that “[a]ll parts of the same

 statute dealing with the same subject are to be construed together as a whole, and

 every part thereof must be given effect if this can be done by any fair and reasonable

 interpretation.” State v. Tew, 326 N.C. 732, 739, 392 S.E.2d 603, 607 (1990) (citation

 omitted). We have even made this observation specifically in the habeas context.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 Hoffman, 48 N.C. App. at 564, 269 S.E.2d at 313 (“Statutes dealing with the same

 subject matter must be construed in pari materia, and harmonized, if possible, to give

 effect to each.”). Consequently, “a provision will not be read in a way that renders

 another provision of the same statute meaningless.” Brown v. Brown, 112 N.C. App.

 15, 21, 434 S.E.2d 873, 878 (1993) (citation omitted).

¶ 39 Finally, the State’s argument ignores the historic development of the writ and

 the intent of the General Assembly reflected in § 17-33. We must be mindful of the

 longstanding “presumption [] that the legislature was fully cognizant of prior and

 existing law within the subject matter of its enactment.” Biddix v. Henredon

 Furniture Indus., Inc., 76 N.C. App. 30, 34, 331 S.E.2d 717, 720 (1985) (citation

 omitted). We must presume that the General Assembly of 1868—the same General

 Assembly that drafted and approved the Constitution of 1868 before it was ratified

 by a popular vote in April of that year, see Sanders, supra at 796—was aware of the

 ancient origins of the writ and North Carolina’s reception of the English Habeas

 Corpus Act of 1679 before the adoption of the Constitution of 1776, and further, that

 our Supreme Court at that time believed the General Assembly lacked the authority

 to deprive the Court of jurisdiction over the writ. With this knowledge, the General

 Assembly of 1868 made two important choices: (1) to constitutionalize the writ and

 a guarantee against its suspension in §§ 18 and 21 of the Constitution of 1868; and

 (2) to broaden the scope of habeas corpus jurisdiction from its origins at common law
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 by enacting § 17-33. Setting aside our Court’s own precedent requiring us to reject

 the State’s argument about the applicability of § 17-33 in criminal cases, we cannot

 ignore these legislative choices.

¶ 40 Moreover, decisions by our Supreme Court contemporaneous with the

 enactment of § 17-33 do not support reading the reference to civil process in the

 statute to refer to civil as opposed to criminal litigation. Instead, the principle

 reflected in the statutory reference to civil process is that the writ of habeas corpus

 is a feature of civil government, and specifically, a feature of the civilian rather than

 military system of justice. Several years before the statute or the Constitution of

 1868 were adopted, during the Civil War, our Supreme Court confirmed this principle

 by denying petitions for habeas corpus by Confederate soldiers awaiting trial by

 Confederate courts martial. Cox v. Gee, 2 Win. 131, 132 (1864). As the Court observed

 in Cox, “[a] soldier, bound to service in the army, when once enrolled and assigned

 his post of duty, is in military custody, and no longer at liberty to go about at will.”

 Id. “Legitimate inquiry in such cases goes only to the extent of ascertaining whether

 the prisoner is rightfully in the army[,]” the Court held. Id. at 133. The year before,

 the Court had confirmed the converse: “the Court . . . ha[d] jurisdiction . . . to

 discharge [a] citizen whenever it appear[ed] that he [was] unlawfully restrained of

 his liberty by an officer of the Confederate States.” In re Bryan, 60 N.C. at 19

 (emphasis added). Likewise, two years after the adoption of the Constitution of 1868
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 and the enactment of § 17-33, the Court held that a military officer detaining a

 civilian could not lawfully ignore the command of a writ of habeas corpus issued by a

 civilian court. In re Moore, 64 N.C. 802, 808-10 (1870).

¶ 41 Cox, In re Bryan, and In re Moore demonstrate that the reference in § 17-33 to

 civil process codified a distinction between civil and military systems of justice rather

 than civil and criminal litigation. We therefore do not construe the reference in § 17-

 33 to “civil process” to mean the statute is inapplicable to people who are imprisoned

 after being convicted and sentenced for violations of the criminal law. Accordingly,

 we reiterate our holding in Leach that an incarcerated person may petition for

 issuance of a writ of habeas corpus under § 17-33(2) based on the occurrence of an

 “act, omission, or event” entitling the party to discharge, even though the writ would

 not have issued in such cases at common law. See 227 N.C. App. at 410 n.4, 742

 S.E.2d at 615 n.4.

 B. The Statutory Scheme Governing Writs of Habeas Corpus

¶ 42 Chapter 17 of the General Statutes contains the habeas statutes. Section 17-

 3 provides:

 [e]very person imprisoned or restrained of his liberty
 within this State, for any criminal or supposed criminal
 matter, or on any pretense whatsoever, except in cases
 specified in G.S. 17-4, may prosecute a writ of habeas
 corpus, according to the provisions of this Chapter, to
 inquire into the cause of such imprisonment or restraint,
 and, if illegal, to be delivered therefrom.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 N.C. Gen. Stat. § 17-3 (2019).8

¶ 43 The petition may be made by a party or any person on behalf of a party, id.

 § 17-5, and may be directed to any superior or appellate court judge, id. § 17-6. It

 “must allege . . . that the party ‘is imprisoned or restrained of his liberty,’ the location

 of the party’s imprisonment, the person restraining the imprisoned party, ‘[t]he cause

 or pretense of such imprisonment or restraint,’ and [include] [] supporting

 documents.” Chavez, 374 N.C. at 469, 843 S.E.2d at 148 (quoting N.C. Gen. Stat.

 § 17-7(1)-(3)).

¶ 44 If the petition has merit, the judge to whom it is presented “shall grant the

 writ without delay,” N.C. Gen. Stat. § 17-9 (2019); however, the petition must be

 denied if “it appear[s] from the application itself or from the documents annexed that

 the person applying or for whose benefit it is intended is . . . prohibited from

 prosecuting the writ.” Id. The court’s determination whether to grant or deny the

 petition must be based on “the face of the applicant’s application, including any

 supporting documentation[.]” Leach, 227 N.C. App. at 406, 742 S.E.2d at 613.

 Accordingly, “the reviewing judge must determine if the application, on its face,

 8 Scholarly commentators have noted that “[t]he word chosen, ‘restraint,’ is
 intentionally comprehensive and includes all sorts of confinement, not limited to jails and
 prisons.” Orth & Newby, supra at 75. “The remedy to which everyone is entitled, although
 somewhat obscured by the punctuation, is twofold: to inquire into the lawfulness of the
 restraint and to remove it if unlawful.” Id.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 provides a basis for believing that the applicant is, in fact, entitled to be discharged

 from imprisonment or restraint and must, if it does, issue a writ of habeas corpus.”

 Id. at 405, 742 S.E.2d at 612.

¶ 45 If the petition is granted and the writ issues, “[t]he person or officer on whom

 the writ is served must make a return thereto in writing,” either immediately or at

 the time specified in the writ, N.C. Gen. Stat. §§ 17-14, -13 (2019), “stating whether

 the individual upon whom the writ is served ‘has or has not the party in his custody

 or under his power or restraint’ and, if so, ‘the authority and the cause of such

 imprisonment or restraint[,]’ along with any documents supporting the imprisonment

 or restraint[,]” Chavez, 374 N.C. at 470, 843 S.E.2d at 148 (quoting N.C. Gen. Stat.

 § 17-14(1)-(3)). After the return is made, the judge who issued the writ is required to

 examine into the facts contained in such return, and into
 the cause of the confinement or restraint of such party,
 whether the same has been upon commitment for any
 criminal or supposed criminal matter or not; and if issue be
 taken upon the material facts in the return, or other facts
 are alleged to show that the imprisonment or detention is
 illegal, or that the party imprisoned is entitled to his
 discharge, the court or judge shall proceed, in a summary
 way, to hear the allegations and proofs on both sides, and
 to do what to justice appertains in delivering, bailing or
 remanding such party.

 N.C. Gen. Stat. § 17-32 (2019) (emphasis added). Thus, “[a]fter the writ has been

 served and the custodial officer makes the required return, the trial court must make

 the factual and legal decisions necessary to determine whether the applicant is, in
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 fact, lawfully imprisoned or restrained utilizing such procedures as suffice to

 adequately resolve any relevant issues of law or fact.” Leach, 227 N.C. App. at 405,

 742 S.E.2d at 612.

¶ 46 North Carolina General Statutes §§ 17-33 and -34 respectively govern

 discharge and remand, possible dispositions after a return of a writ. See N.C. Gen.

 Stat. §§ 17-33, -34 (2019). “A party petitioning for the issuance of a writ of habeas

 corpus shall be discharged ‘[i]f no legal cause is shown for such imprisonment or

 restraint, or for the continuance thereof.’” Chavez, 374 N.C. at 469, 843 S.E.2d at 148

 (quoting N.C. Gen. Stat. § 17-33). If the petitioner is not successful in obtaining

 discharge, the party must be remanded to custody. See N.C. Gen. Stat. § 17-34 (2019).

 Section 17-33 provides that discharge is proper in the following circumstances:

 (1) Where the jurisdiction of such court or officer has
 been exceeded, either as to matter, place, sum or person.

 (2) Where, though the original imprisonment was
 lawful, yet by some act, omission or event, which has taken
 place afterwards, the party has become entitled to be
 discharged.

 (3) Where the process is defective in some matter of
 substance required by law, rendering such process void.

 (4) Where the process, though in proper form, has been
 issued in a case not allowed by law.

 (5) Where the person, having the custody of the party
 under such process, is not the person empowered by law to
 detain him.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 (6) Where the process is not authorized by any
 judgment, order or decree of any court, nor by any provision
 of law.

 Id. § 17-33 (emphasis added). Regarding remand, § 17-34 provides:

 It is the duty of the court or judge forthwith to remand the
 party, if it appears that he is detained in custody, either—

 (1) By virtue of process issued by any court or judge of
 the United States, in a case where such court or judge has
 exclusive jurisdiction.

 (2) By virtue of the final judgment or decree of any
 competent court of civil or criminal jurisdiction, or of any
 execution issued upon such judgment or decree.

 (3) For any contempt specially and plainly charged in
 the commitment by some court, officer or body having
 authority to commit for the contempt so charged.

 (4) That the time during which such party may be
 legally detained has not expired.

 Id. § 17-34.

¶ 47 A petition may also be summarily denied. Section 17-4 provides:

 Application to prosecute the writ shall be denied in the
 following cases:

 (1) Where the persons are committed or detained by
 virtue of process issued by a court of the United States, or
 a judge thereof, in cases where such courts or judges have
 exclusive jurisdiction under the laws of the United States,
 or have acquired exclusive jurisdiction by the
 commencement of suits in such courts.

 (2) Where persons are committed or detained by virtue
 of the final order, judgment or decree of a competent
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 tribunal of civil or criminal jurisdiction, or by virtue of an
 execution issued upon such final order, judgment or decree.

 (3) Where any person has willfully neglected, for the
 space of two whole sessions after his imprisonment, to
 apply for the writ to the superior court of the county in
 which he may be imprisoned, such person shall not have a
 habeas corpus in vacation time for his enlargement.

 (4) Where no probable ground for relief is shown in the
 application.

 Id. § 17-4. Largely mirroring the remand statute, § 17-34, § 17-4(2) thus provides the

 general rule that summary denial of a petition is proper if a party is “committed or

 detained by virtue of the final order, judgment or decree of a competent tribunal of

 civil or criminal jurisdiction, or by virtue of an execution issued upon such final order,

 judgment or decree.” Id. § 17-4(2).

¶ 48 However, this general rule appears to conflict with § 17-33(2), which appears

 to require summary denial of a petition where a party is “committed or detained by

 virtue of the final order, judgment or decree of a competent tribunal of civil or

 criminal jurisdiction,” id. § 17-4(2), when remand would be required, id. § 17-34(2),

 while § 17-33 requires discharge rather than remand if, “though the original

 imprisonment was lawful, yet by some act, omission or event, which has taken place

 afterwards, the party has become entitled to be discharged[,]” id. § 17-33(2). Reading

 § 17-4 without reference to § 17-33 could lead a court reviewing a habeas petition to

 mistakenly conclude that a party “committed or detained by virtue of the final order,
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 judgment or decree of a competent tribunal of civil or criminal jurisdiction,” id. § 17-

 4(2), was “prohibited from prosecuting the writ[,]” id. § 17-9, resulting in summary

 denial of the petition without resolving whether because of “some act, omission or

 event, . . . the party has become entitled to be discharged[,]” id. § 17-33(2), as

 happened in Leach. See 227 N.C. App. at 401, 742 S.E.2d at 610. That is also what

 appears to have happened here.

¶ 49 We have held that these provisions “must be construed in pari materia, and

 harmonized, if possible, to give effect to each.” Hoffman, 48 N.C. App. at 564, 269

 S.E.2d at 313. “It is a canon of construction that statutes that are in pari materia

 may be construed together, so that inconsistencies in one statute may be resolved by

 looking at another statute on the same subject.” In pari materia, Black’s Law

 Dictionary (11th ed. 2019). To give meaning to every word of § 17-33 and harmonize

 the apparent conflict between § 17-33(2) and § 17-4(2) in light of the legislative intent

 expressed in § 17-33(2), we hold that § 17-33(2) provides an exception to the general

 rule provided by § 17-4(2). We note that this holding is implied by our holdings in In

 re Stevens, Hoffman, and Leach—and, indeed, is required by our Court’s controlling

 precedent on this question—but we make it expressly here.

 C. The Trial Court’s Summary Denial of the Petition for Habeas Corpus in
 The Present Case

¶ 50 In the present case, the trial court ordered in relevant part as follows:
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 Petitioner has a long history of respiratory illness,
 which includes coughing up blood and extreme difficulty
 breathing. Furthermore, he was treated for bronchitis in
 May 2020 and pleurisy of the lungs on June 10, 2020.
 Petitioner is housed at Harnett Correctional Institute. On
 June 6, 2020, Harnett Correctional Institute had an inmate
 with a positive test for COVID-19. Petitioner argues that
 “some act, omission, or event, which has taken place
 afterwards, the party has become entitled to be
 discharged.”

 ...

 A petition for a writ of habeas corpus shall be denied
 where a person is held pursuant to a valid final judgment
 in a criminal case entered by a court with proper
 jurisdiction. N.C. Gen. Stat. § 17-4(2) (2019). Upon review
 of the judgments presented attached to this petition, these
 judgments are valid final judgments entered by a court
 with proper jurisdiction.

 Pursuant to N.C. Gen. Stat. § 17-4(2), the Court
 concludes as a matter of law that the Defendant is confined
 by virtue of valid final judgments entered by a court of
 competent jurisdiction. Therefore, Defendant’s
 application/petition for writ of habeas corpus is summarily
 denied.

¶ 51 The order under review is thus more detailed than required under our holdings

 in Leach. We repeat these holdings in relevant part here:

 (1) the decision concerning whether an application for a
 writ of habeas corpus should be summarily denied is a pure
 question of law;

 (2) a trial judge need not make findings of fact when the
 question before the court is purely legal in nature;

 (3) we review whether an application for a writ of
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 habeas corpus should be summarily denied using a de novo
 standard of review; and

 (4) a petitioner for habeas corpus must provide us with
 sufficient information to establish the accuracy of the
 factual predicate underlying the challenge to the trial
 court’s order.

 See 227 N.C. App. at 406-07, 414, 742 S.E.2d at 613, 618.

¶ 52 In this case, though the trial court entered a reasoned order articulating a

 rationale for the denial of the petition, doing so was not required, and our review of

 the trial court’s decision is de novo. Accordingly, as in Leach, whether we affirm or

 reverse the order does not depend on whether we agree on appeal that the trial court

 cited the correct legal basis for summary denial of the petition. We now turn to

 whether the trial court erred on the merits.

 D. The Necessity of Conducting an Evidentiary Hearing Based on the
 Allegations in the Petition and Accompanying Materials

¶ 53 The question on the merits is whether the application provided a “colorable

 basis for concluding that [Petitioner’s] claim to have a protected liberty interest in his

 release from confinement . . . ha[d] merit.” Id. at 411-12, 742 S.E.2d at 616 (emphasis

 added). We conclude that it did not. As in Leach, Petitioner in this case failed to

 make a threshold showing of a forecast of admissible evidence that was individualized

 to the circumstances of his case that there was a material issue of fact as to whether

 an “act, omission, or event” had occurred entitling him to discharge. See id. at 411-

 12, 742 S.E.2d at 616. We therefore affirm the order of the trial court, though for a
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 different reason than the one provided in the trial court’s order, N.C. Gen. Stat. § 17-

 4(2).

¶ 54 Petitioner alleged in his application that his imprisonment at the Harnett

 Correctional Institution violated the Eighth Amendment to the United States

 Constitution and Article I, § 27 of the North Carolina Constitution. Petitioner alleged

 in relevant part as follows:

 [U]pon information and belief, [Petitioner] has a
 long history of respiratory illness and is currently coughing
 up blood, has had extreme difficulty breathing over the last
 several months, was treated for bronchitis in May 2020
 with prednisone and antibiotics, on June 10[,] 2020 was
 diagnosed and treated with pleurisy of the lungs, has been
 given a second round of antibiotics to be taken over 21 days,
 an inhaler with prednisone, and continuing breathing
 treatments.

 ...

 On June []6, 2020, the Harnett Correctional
 Institute, although still unreported on the [] DPS website,
 had an inmate with a positive test for COVID-19. [] DPS
 will not conduct mass testing at a facility and will only
 conduct tests upon those individuals who show symptoms.
 Since June []6, the L dorm, which has 4 pods, where the
 inmate who tested positive [lives], is in complete lockdown.
 Furthermore, Harnett County and [] DPS make much ado
 of Power Breather Machines, yet those machines were
 removed from Harnett Correctional on June []3, 2020.

 Despite the measures taken to date by . . . DPS and
 Harnett Correctional, and not having any previous positive
 cases, it is clear that the facility is incapable of ensuring
 that [Petitioner] not be exposed to COVID-19. [] DPS’s
 safety measures have been in place for over two months at
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 the Harnett Correctional Institution and still an inmate
 was exposed to and contracted COVID-19 and displayed
 symptoms. Much can be said of other inmates who may be
 asymptomatic and pose a serious risk of harm to
 [Petitioner]. [Petitioner’s] physical condition places him at
 extreme risk of death should he contract the respiratory
 illness COVID-19.

 Furthermore, over the last several days North
 Carolina has seen a surge in COVID-19 cases and the
 [Centers for Disease Control (“CDC”)] projects [an]
 increase in deaths due to COVID-19.

 ...

 The CDC has explicitly highlighted that jails and
 detention centers are ideal environments for the spread of
 contagious diseases. In an interim guidance issued on
 March 23, 2020[,] the CDC stated: “Incarcerated/detained
 persons live, work, eat, study, and recreate within
 congregate environments, heightening the potential for
 COVID-19 to spread once introduced.”

 ...

 [I]t is clear that due to [Petitioner’s] medical history
 and condition, [] DPS’s continued actions that directly
 place [Petitioner] in harm’s way, DPS’s inability to protect
 [Petitioner] from contracting COVID-19, and the very
 serious risk of death for [Petitioner], that [Petitioner’s]
 continued confinement is both “cruel and unusual” and
 “cruel or unusual” under the Eighth Amendment to the
 [United States] Constitution and Article 1, § 27 of the
 North Carolina Constitution, respectively.

 (Citations omitted.)

¶ 55 In support of his allegations regarding his “extreme risk of death . . . [from]

 COVID-19[,]” Petitioner submitted voluminous materials. These materials included
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 an affidavit by himself, an affidavit by his wife, letters he had written while

 incarcerated containing contemporaneous notes about his medical treatment and

 symptoms, data from the CDC’s website and from DPS’s website about COVID-19,

 the declarations of several expert witnesses filed in litigation related to COVID-19

 and prison conditions in federal court in other states, and his medical records from

 his time in the custody of DPS. Notably absent from these materials was any

 affidavit, declaration, or other report of any kind of an expert Petitioner had retained

 to offer an opinion or testify about Petitioner’s elevated risk of severe illness or other

 medical complications from COVID-19 based on an examination of Petitioner or

 review of his medical records. Nor did Petitioner provide any medical records in

 support of his petition that predated his time in the custody of DPS that documented

 the diagnosis, treatment, and severity of the medical conditions from which he

 allegedly suffers.

¶ 56 Instead, aside from the affidavits by himself and his wife and his DPS medical

 records, the materials submitted in support of Petitioner’s allegations—like many of

 the allegations themselves—all generally concerned the dangers of COVID-19 in

 congregate living conditions such as prisons and data about COVID-19 cases in North

 Carolina’s prisons. General information such as this could have supported similar

 claims raised by any prisoner in DPS custody experiencing medical conditions or

 other COVID-19 comorbidities. Although this information supported many of the
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 allegations in the petition, absent from the materials submitted in support of the

 petition was an evidentiary link between the general dangers of COVID-19 in

 congregate living conditions like prisons and the specific medical conditions from

 which Petitioner allegedly suffers.

¶ 57 The absence of an evidentiary link between the general information in the

 application and the specific circumstances of Petitioner’s medical conditions—aside

 from the affidavits by Petitioner and his wife—left an evidentiary gap in the

 materials submitted in support of the petition that we hold was fatal to Petitioner’s

 ability to demonstrate in the application that there was a “colorable basis for

 concluding that [Petitioner’s] claim[s] . . . ha[d] merit.” Leach, 227 N.C. App. at 412,

 742 S.E.2d at 616. Simply put, the materials submitted in support of the petition did

 not show how Petitioner’s medical conditions put him at an elevated risk for serious

 illness or other medical complications from COVID-19, much less an “extreme risk of

 death . . . [from] COVID-19.”

¶ 58 In his affidavit, Petitioner averred in relevant part as follows:

 6. There are over 600 inmates here at Harnett
 Correctional Institution. Many are sick, coughing, and sick
 calls are taking up to 6 weeks to be seen.

 7. I was diagnosed with asthma prior to becoming
 incarcerated and I have an albuterol inhaler to this date in
 Harnett Correctional Institution.

 8. There are no masks, gloves, or sanitizer, and our
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 beds are less than 3 feet apart. There is black mold from
 the walls to the ceilings.

 9. As the pandemic COVID-19 is rapidly spreading in
 the other prisons near Harnett Correctional Institution,
 some of our correctional officers have been working at the
 Neuse Prison for the last week, and their cases have
 jumped from 80 to almost 300.

 10. There hasn’t been any COVID-19 testing done here
 at Harnett Correctional Institution yet, and I fear for my
 life as the COVID-19 begins to spread closer and closer to
 us here.

 11. With me having asthma, I fear for my life that I will
 die in here once the COVID-19 spreads in here, as more
 and more inmates are getting sick.

 Though this affidavit was not dated, as the trial court’s order reflects, by the time the

 petition was filed on 15 June 2020, some COVID-19 testing had been conducted at

 Harnett Correctional Institute, detecting a positive case on 6 June 2020.

¶ 59 Petitioner’s wife averred in her affidavit in relevant part as follows:

 3. [Petitioner] has asthma and throughout the 16+
 years I’ve known him and have lived with him, I have
 witnessed his asthma and respiratory conditions
 worsening as he gets older.

 4. [Petitioner] has been a carpenter for 23 years and
 has been exposed to asbestos due to the renovation of
 approximately 27 historic homes.

 5. [Petitioner] has also been exposed to a lot of black
 mold due to the repairing of a little over 100 storm, flood,
 and hurricane-damaged homes. These exposures to
 asbestos and black mold were over a 17 to 19 year span and
 his respiratory health declined.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

6. [Petitioner] also served as a firefighter for the
Turkey Fire Department and was exposed to severe smoke
inhalation for a couple of years.

7. Prior to [Petitioner] losing his trial and being
incarcerated, he has had a rescue inhaler prescription with
an expiration date of February 2020 (RX 6446327). He has
a nebulizer (breathing treatment) and Albuterol
medications to be used as needed daily. [Petitioner] has
been on and off prednisone and antibiotics due to his lungs
developing respiratory infections, frequent bronchitis, and
asthma have all worsened with age.

8. As his wife, I have witnessed his breathing and
asthma worsening. Smokey, not well ventilated, hot, and
moldy prison environments increase the severity of his
health conditions with his labored breathing, comprised
[sic] lungs, asthma, respiratory infections, and frequent
bronchitis.

...

10. The deadly COVID-19 virus is now in the prisons
and Harnett Correctional Facility where my husband
currently lives.

11. I fear that with [Petitioner’s] medical history prior
to being incarcerated and with his current health
conditions declining, vulnerability of his lungs, worsening
of his asthma, and respiratory infections, that if he
contracts this deadly COVID-19 virus, his chances of losing
his life are so much greater due to this environment.

12. His immune system is not strong enough to combat
this virus successfully.

...

15. Harnett Correctional Institution’s environment, like
all of the other prisons, is not safe for [Petitioner’s] well-
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 being due to him being at a higher risk due to his asthma
 and the conditions of his lungs and breathing.

 16. Most importantly, if he were to contract the deadly
 COVID-19 virus that is now present in Harnett
 Correctional Institution (and the other prisons) he would
 more likely succumb to the virus’s wrath.

 17. With the prison facilities’ environment – smoke-
 filled air, lack of ventilation and air conditioning, black
 mold, beds less than 3ft [sic] apart, and COVID-19 present
 now – [Petitioner] would most likely not survive if he is
 exposed to the virus.

¶ 60 A review of these affidavits discloses an evidentiary forecast of four important

 facts to which Petitioner and his wife could have testified at an evidentiary hearing:

 (1) Petitioner had been diagnosed with asthma and other respiratory illness and had

 been prescribed medication for these conditions; (2) Petitioner was imprisoned at

 Harnett Correctional Institution, where there was no known COVID-19 outbreak but

 outbreak was certainly possible and perhaps likely because of conditions at the

 prison; (3) Petitioner had been engaged in vocational activities prior to his

 imprisonment that worsened his respiratory illness as he aged; and (4) perhaps most

 predominantly, Petitioner and his wife feared for his life while he was incarcerated

 during a pandemic in conditions rendering many precautionary measures

 recommended for minimizing the risk of COVID-19 impossible for Petitioner, like so

 many other prisoners confined in jails and prisons in North Carolina.

¶ 61 Generally speaking, “[e]very person is competent to be a witness[.]” N.C. Gen.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

Stat. § 8C-1, Rule 601(a) (2019). Petitioner and his wife certainly could testify as fact

witnesses under the limits of Rule 602 of the North Carolina Rules of Evidence

regarding their knowledge of Petitioner’s medical history and the severity of the

symptoms of his asthma and other respiratory illness and any medications he had

taken or other treatment he had received. See id., Rule 602 (“A witness may not

testify to a matter unless evidence is introduced sufficient to support a finding that

he has personal knowledge of the matter.”). However, based on the record before us,

neither are possessed of expert qualifications on averments in their affidavits

important to bridge the gap between the individual circumstances of Petitioner’s case

and his medical conditions and the general information in the application about the

dangers of COVID-19 to people with respiratory conditions and the increased risk of

COVID-19 in prison.9

9 Rule 702 of the North Carolina Rules of Evidence sets forth the following general standard

for the admissibility of expert testimony:

 (a) If scientific, technical or other specialized knowledge will
 assist the trier of fact to understand the evidence or to determine
 a fact in issue, a witness qualified as an expert by knowledge,
 skill, experience, training, or education, may testify thereto in
 the form of an opinion, or otherwise, if all of the following apply:

 (1) The testimony is based upon sufficient facts or data.

 (2) The testimony is the product of reliable principles and
 methods.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

¶ 62 We do not mean to suggest that we doubt the sincerity or question in any way

 the legitimacy of Petitioner and his wife’s fears for his life while imprisoned during a

 pandemic. We do, however, conclude that the averments in the affidavits by

 Petitioner and his wife and the other materials submitted in support of the petition

 fail to demonstrate that any testimony Petitioner or his wife might offer about his

 prognosis and increased risk of serious illness or complications from COVID-19

 because of his health conditions would be admissible expert testimony under Rule

 702. Nor would these averments qualify as admissible lay opinion testimony under

 Rule 701, which limits the admissibility of lay witness testimony “in the form of

 opinions or inferences . . . to those opinions or inferences which are (a) rationally

 based on the perception of the witness and (b) helpful to a clear understanding of his

 testimony or the determination of a fact in issue.” Id., Rule 701 (2019). While “a lay

 witness may give an opinion concerning the state of a person’s health[,]” State v.

 Galloway, 304 N.C. 485, 491, 284 S.E.2d 509, 514 (1981) (citation omitted), only an

 expert can give competent evidence of “complicated medical questions far removed

 from the ordinary experience and knowledge of laymen,” Click v. Pilot Freight

 (3) The witness has applied the principles and methods
 reliably to the facts of the case.

 N.C. Gen. Stat. § 8C-1, Rule 702 (2019). The record does not contain any indication that
 Petitioner or his wife meet the general standard provided by Rule 702 for admissible expert
 testimony related to Petitioner’s prognosis while in prison and his increased risk of serious
 illness or complications from COVID-19 because of his medical conditions.
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). The averments related

 to Petitioner’s heightened probability of severe illness or complications from COVID-

 19 belong to the latter category.

¶ 63 All that is left to bridge the evidentiary gap we have identified as the fatal

 defect in Petitioner’s application are his medical records while in the custody of DPS.

 We conclude that these medical records do not demonstrate what the prognosis for

 Petitioner’s asthma and other respiratory illness in prison is or what the increased

 risk of serious illness or complications from COVID-19 to Petitioner would be. This

 is not particularly surprising based on the constraints under which the medical staff

 at the prison were working during the time the records were created and the role of

 these staff at the prison, which is not forensic. These records also document

 numerous medical visits while Petitioner was in prison when he denied having a

 history of past respiratory conditions, including denying that he had asthma.

¶ 64 In fact, based on these medical records, the first time DPS became aware of

 Petitioner’s asthma and history of respiratory illness was when he was first

 diagnosed with mild intermittent asthma on 8 May 2020, once news of the pandemic

 was widespread. This detail, while not by itself dispositive, combined with the lack

 of individualized evidentiary support in the application, undermines Petitioner’s

 credibility related to his averments and contemporaneous notes about the severity of

 his medical conditions in our assessment, as does the fact that all of his crimes involve
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 dishonesty. Ordinarily, we do not make credibility assessments as an appellate court.

 See, e.g., Headen v. Metro. Life Ins. Co., 206 N.C. 860, 862, 175 S.E. 282, 283 (1934)

 (“It is not a matter for review on appeal that the jury declined to believe the evidence

 of one of the parties, or that the trial court refused to set aside the verdict as against

 the weight of the evidence.”). However, on de novo review of a pure question of law,

 we must consider what weight the trial court should have given the evidentiary

 support in the application. See N.C. Gen. Stat. § 17-32 (2019) (requiring an

 evidentiary hearing only where “issue be taken upon the material facts in the return,

 or other facts are alleged to show that the imprisonment or detention is illegal, or

 that the party imprisoned is entitled to his discharge”). As far as Petitioner’s medical

 records while in the custody of DPS are concerned, we conclude that these records do

 not provide a “colorable basis for concluding that [Petitioner’s] claim[s] . . . ha[d]

 merit.” Leach, 227 N.C. App. at 411, 742 S.E.2d at 616.

¶ 65 In sum, the application did not show how Petitioner’s medical conditions put

 him at an elevated risk for serious illness or other complications from COVID-19. The

 absence of an evidentiary link between the general information in the application and

 the specific facts of Petitioner’s case was fatal to Petitioner’s ability to make a

 threshold showing that there was a material issue of fact as to whether an “act,

 omission, or event” had occurred entitling him to discharge. No hearing under § 17-

 32 was therefore required. Accordingly, we affirm the trial court’s summary denial
 STATE V. DAW

 2021-NCCOA-180

 Opinion of the Court

 of the petition.

 VI. Conclusion

¶ 66 We affirm the order of the trial court because the application for habeas corpus

 did not demonstrate that Petitioner had colorable claims for violations of his rights

 to be free from cruel and unusual punishment under the Eighth Amendment to the

 United States Constitution and cruel or unusual punishment under Article 1, § 27 of

 the North Carolina Constitution.

 AFFIRMED.

 Judges COLLINS and GORE concur.